## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| TEXAS AUTO SALVAGE, INC., AND | § | |
| DANIEL HACK, | § | |
| *Plaintiffs*, | § | |
| | § | CIVIL ACTION NO. 5:25-cv-00052-XR |
| | § | |
| CITY OF SAN ANTONIO, ET AL., | § | |
| *Defendants.* | § | **JURY TRIAL DEMANDED** |

### PLAINTIFFS' THIRD AMENDED COMPLAINT[1]

Plaintiffs, Texas Auto Salvage, Inc. ("TASI") and Daniel Hack (collectively, "Plaintiffs") file this their Third Amended Complaint against Defendants City of San Antonio ("COSA"), Roderick Sanchez, Michael Shannon ("Shannon"), Amin Tohmaz ("Tohmaz"), Danny Liguez, Jenny Ramirez, Roxanne Ramirez, Christopher Tejeda, Jonathan Rosales, Jose Gutierrez Jr., and Sergio Quintanilla (collectively "Defendants") and for causes of action and would respectfully show the Court as follows:

### INTRODUCTION

1.      Plaintiff TASI is a metal recycling entity ("MRE") located at 609 Somerset Road in the south side of San Antonio. MREs are more commonly known as "scrap yards." At an MRE, a customer sells "scrap" metal or items with a metal salvage value to the MRE. The MRE then gives the scrap metal a second life by sorting and processing the metals for future use. Contrary to the connotation accompanying their colloquial name, MREs are a serious business that vastly benefits the state and national economy. They also benefit the environment because they provide consumers and businesses with an incentive to recycle goods containing metals. Plaintiff Daniel Hack owns and operates Plaintiff TASI: an MRE. Plaintiffs run a clean, ethical, and safe operation.

---

[1] Plaintiffs' last live pleading in state court before Defendant COSA's removal was their "Second Amended Petition." Accordingly, for the sake of consistency, Plaintiffs title this pleading their "Third Amended Complaint."

2.      In the south side of San Antonio, there are two sets of laws for MREs and used auto parts recyclers ("UAPRs").[2] On the one hand, there is the rule of impunity. This rule applies to almost all MREs and UAPRs. Conversely, there are the rules for Plaintiffs, which is a discriminatory, city-led regime of spite and discrimination.

3.      Defendants consciously allow southside MREs and UAPRs to flout the San Antonio Municipal Code and environmental laws and regulations. This practice provides an unpleasant scene. A walk down Somerset Road in San Antonio's southside reveals mountains on MREs and UAPRs businesses' property, but San Antonio is not known for its mountain vistas. MREs and UAPRs simply pay their customers and then throw the products into an ever-expanding mountain of scrap metal and garbage. Illegal towers of scrapped vehicles accompany their garbage mountains like guard towers around a maximum-security prison. Unlike a prison, however, the fencing around San Antonio MREs and UAPRs are poorly maintained, making the mess conspicuous to the public. Used oil, battery acid and radiator fluid by-products stain the soil and pollute the stormwater. And the smells of toxic fires corrupt the air.[3]

4.      An egregious example of these practices are the MRE and UAPR businesses operated by Daniel Delagarza Ramirez ("Danny Ramirez") and Monterey Iron and Metal Recycling. Below is an image of one of the trash mountains on the premises of one of Mr. Ramirez's businesses:

---

[2] A UAPR is a similar business that "scraps" used automobiles and salvages its parts.
[3] *See e.g.*, https://news4sanantonio.com/news/local/south-side-neighborhood-demands-accountability-for-dangerous-recycling-plants-fires-san-antonio-texas-bexar-county-committee-century-business.



Mr. Ramirez's businesses are a complete environmental disaster and entirely out of compliance with the San Antonio Municipal Code MRE regulations. Some of his businesses do not have the applicable certificate of occupancy. His businesses illegally dispose of oil and radiator fluid, which pollutes the run-off water. As depicted above, his businesses illegally pile scrap metal into trash mountains. COSA allows these harmful practices because it refuses to enforce its MRE and UAPR regulations against MRE and UAPR businesses.

5.    Likewise, Monterey Iron and Metal Recycling is another unmitigated environmental disaster that is permitted to flourish by Defendants. Monterey piles mountains of carcinogenic and toxic auto shredder residue on the premises of their business. This is readily apparent to the public because Defendants permits this business to flout San Antonio Municipal Code regulations regulating fencing. Defendants' encouraged defiance of the law is so obvious that some of Monterey's premises are completely unfenced:



6.      And then there is the "law" for Plaintiffs. To an outside observer, San Antonio MRE and UAPR regulations would seem like a general set of rules of conduct for these businesses that protect public health and the environment. But when it comes to Plaintiffs, that is not the case. Rather, Defendants use these regulations as instruments of oppression to harass Plaintiff, settle petty personal vendettas, and suppress their federal constitutional rights.

7.      Plaintiffs bring this suit for two reasons. One, to abate and enjoin Defendants' *ultra vires* actions as officers in San Antonio Development Services Department. Two, to receive damages from and enjoin further violation of Plaintiffs' federal constitutional rights by Defendants.

## PARTIES[4]

8.      Plaintiff Texas Auto Salvage, Inc. is a Texas corporation with its principal place of business in San Antonio, Texas. Pursuant to Federal Rule of Civil Procedure 7.1, no other

---

[4] Individual parties are named in the individual capacities insofar as they committed acts and/or omissions that violate Plaintiffs' federal constitutional rights. The Individual parties are named in their official capacities insofar as they committed *ultra vires* acts. For this reason, the Texas Tort Claims Act (Tex. Civ. Prac. & Rem. Code § 101.001, *et seq.*) does not apply to this action.

corporation owns 10% or more of its stock: Plaintiff Texas Auto Salvage is 100% owned and controlled by Plaintiff Daniel Hack.

9.      Plaintiff Daniel Hack is an individual and resident of the State of Texas.

10.     Defendant COSA is a municipality located in the State of Texas, and it has been served with process and filed an answer herein.

11.     Defendant Roderick Sanchez is the former Director of the City of San Antonio Development Services Department, and he has been served with process and filed an answer herein. Roderick Sanchez is sued in his individual capacity.

12.     Defendant Michael Shannon is the Director of the City of San Antonio Development Services Department, and he has been served with process and filed an answer herein. Michael Shannon is sued in his individual and official capacity.

13.     Defendant Amin Tohmaz is the Director Field Services in the City of San Antonio Development Services Department, and he has been served with process and filed an answer herein. Defendant Amin Tohmaz is sued in his individual and official capacity.

14.     Defendant Danny Liguez is the Code Enforcement Administrator in the City of San Antonio Development Services Department, and he has been served with process and filed an answer herein. Defendant Danny Liguez is sued in his individual and official capacity.

15.     Defendant Jenny Ramirez is the Development Services Manager in the City of San Antonio Development Services Department, and she has been served with process and filed an answer herein. Defendant Jenny Ramirez is sued in her individual and official capacity.

16.     Defendant Roxanne Ramirez is a Licensing/Permitting and Zoning Code Enforcement Manager in the City of San Antonio Development Services Department, and she has

been served with process and filed an answer herein. Defendant Roxanne Ramirez is sued in her individual and official capacity.[5]

17.    Defendant Christoper Tejeda is a Code Enforcement Officer in the City of San Antonio Development Services Department, and he has been served with process and filed an answer herein. Defendant Christopher Tejeda is sued in his individual and official capacity.

18.    Defendant Jonathan Rosales is a Code Enforcement Officer in the City of San Antonio Development Services Department, and he has been served with process and filed an answer herein. Defendant Jonathan Rosales is sued in his individual and official capacity.

19.    Defendant Jose Gutierrez Jr. is a former Code Enforcement Officer in the City of San Antonio Development Services Department. He may be served with process at 100 Military Plaza #4, San Antonio, Texas 78205, or anywhere he may be found. Defendant Jose Gutierrez Jr. is sued in his individual and official capacity.

20.    Sergio Quintanilla is a Code Enforcement Officer in the City of San Antonio Development Services Department. He may be served with process at 100 Military Plaza #4, San Antonio, Texas 78205, or anywhere he may be found. Defendant Sergio Quintanilla Jr. is sued in his individual and official capacity.

## JURISDICTION AND VENUE

21.    This Honorable Court has proper jurisdiction over the parties to and subject matter of this action. This Court has federal question jurisdiction over Plaintiffs' 42 U.S.C. § 1983 claims. 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiffs' state law claims. 28 U.S.C. § 1367.

---

[5] Defendants Roxanne Rameriez, Christopher Tejada, Jonathan Rosales, Jose Gutierrez, Jr., and Sergio Quintanilla hereinafter defined as "Defendant Code Enforcement Officers."

22.     Venue is proper in this Honorable Court under 28 U.S.C. § 1391. Upon information and belief, all Defendants reside in the Western District of Texas. Accordingly, venue is proper under 28 U.S.C. § 1391(b)(1). Venue is additionally proper in this Honorable Court as a substantial part of the events giving rise to Plaintiffs' claims occurred in and a substantial part of the property subject to this action is situated in the Western District of Texas. 28 U.S.C. § 1391(b)(2).

## FACTUAL BACKGROUND

A.     **The San Antonio Municipal Code heavily regulates UAPRs and MREs to protect the public from nuisances.**

23.     Defendant Shannon is the Director of the San Antonio Development Services Department. The San Antonio Development Services Department ("Development Services") is a department of COSA and regulates land and building development in San Antonio. Development Services is also tasked with enforcing San Antonio Municipal Code ("SAMC") environmental, land use, zoning, and safety provisions. SAN ANTONIO, TEX., CODE OF ORDINANCES §§ 10-5, 10-12, 16-200, 16-209, 16-210.7, 35-805 [hereinafter, "SAMC"]. Development Services claims their enforcement "help[s] maintain a vibrant quality of life for [COSA's] residents."[6] However, this is a bureaucratic platitude: This lawsuit will reveal that COSA and Development Service's officers and employees abdicated their responsibilities to enforce these same rules and used them as a weapon to discriminate against Plaintiffs.

24.     Chapter 16—specifically Article VII—regulates both MREs and UAPRs. SAMC § 16, art. VII. Chapter 16 requires MREs and UAPRs to operate businesses in a manner that minimally impacts the environment and the neighborhoods they operate in. *Id.* For example, Chapter 16 requires MREs to store and dispose of hazardous waste in a manner that complies with "all applicable state and federal regulations." *Id.* § 16-201.3(c). Chapter 16 also requires MREs

---

[6] https://www.sanantonio.gov/DSD/About/Leadership#149121368-department-director.

and UAPRs to operate on property zoned for an MRE and UAPR business. *Id.* §§ 16-187, 16-204. Violation of these regulations can be a Class C Misdemeanor criminal offense with a minimum fine of $100 and up to $2,000. *Id.* §§ 16-202, 16-210.20.

25.     Chapter 16 requires that MREs and UAPRs obtain and hold licenses from Development Services to operate their businesses. *Id.* §§ 16-188, 16-205. The Director of Development Services has the power to revoke these licenses after the MRE or UAPR is convicted of multiple violations of Chapter 16 or consistently fails to address violations discovered during an inspection. *Id.* §§ 16-192, 16-209.

26.     Like other businesses in San Antonio, MREs and UAPRs are also subject to Chapter 35 of the SAMC (a/k/a the San Antonio Unified Development Code or "UDC" of "Chapter 35"). The UDC contains the basic rules and regulations for zoning and associated land use in the City of San Antonio. Furthermore, MREs and UAPRs are subject to San Antonio building codes under Chapter 10. These businesses must obtain a Certificate of Occupancy from Development Services before opening any structure to the public. *Id.*

**B.     Defendants Shannon, Tohmaz, Jenny Ramirez, Liguez, and Code Enforcement Officers effectively repealed COSA's MRE and UAPR regulations by not enforcing them against them against MREs and UAPRs in south San Antonio.**

27.     A cursory glance around the south side of San Antonio reveals that Development Services has wholly failed to enforce San Antonio MRE and UAPR regulations. Four MRE businesses exemplify the Development Services' complete abdication of their duties under the SAMC.

28.     **Monterey Iron & Metal Recycling (2300 Frio City Road)**. The premises of this MRE business is currently littered with auto shredder residue and metal fluff piles: the piles almost amount to almost six acres. These piles are byproducts of metal recycling—like sawdust from woodwork. But this residue is a far more pernicious substance than sawdust—the material contains

Polychlorinated Biphenyls ("PCBs"). PCBs are a toxic chemical that adversely affects the environment and public health.[7] These six-acre piles are a substantial violation of SAMC §§ 16-196, 16-210.3, which prohibits improper storage of hazardous waste on UAPR and MRE businesses. These gross violations are readily apparent to the Defendant Code Officers during their monthly inspections.[8] In fact, Defendant Code Enforcement Officers have noted multiple violations by Monterey for metal fluff.

29.    Monterey Iron's fencing does not comply with SAMC §§ 16-195, 16-210.2. These provisions require MREs and UAPRs to have solid barriers that surround the property so that the public cannot view the business or any equipment from the outside. SAMC §§ 16-195, 16-210.2. However, Monterey Iron has no fencing on the back side of its property. Much of its fencing does not extend to the ground and contains obvious breaches. Finally, Monterey Iron's has had five fires or explosions since 2022, which endangered the public surrounding the business.[9]

30.    **San Antonio Auto & Truck Salvage and Danny's Recycling (925 Somerset Road)**. These businesses are both owned and operated by Danny Ramirez. These businesses expanded the premises of their MRE business without proper zoning in violation of SAMC § 16-204. These businesses pile hundreds of used tires on their premises in violation of SAMC §§ 16-926. Mr. Ramirez's businesses also have a practice of illegally disposing of toxic waste and liquid byproducts on the premises of his businesses.[10] These practices are obvious to anyone who walks into Mr. Rameriz's businesses, especially Defendant Code Enforcement Officers who conduct

---

[7] https://www.epa.gov/pcbs/learn-about-polychlorinated-biphenyls.
[8] SAMC §§ 16-200, 16-210.7.
[9] https://www.mysanantonio.com/news/local/article/san-antonio-scrap-metal-fire-18383281.php.
[10] SAMC §§ 16-196, 16-210.3; *see also* TEX. HEALTH AND SAFETY CODE § 361.001, et seq.

monthly inspections.[11] This is shown in a picture below. Oil and toxic waste stains the soil on his businesses' premises:



31.    Mr. Ramirez's businesses do not have the proper certificate of occupancy for the large canopy structure located at 925 Somerset Road. SAMC § 10-12 states that "[n]o building or structure shall be used or occupied, and no change in the existing use or occupancy classification of a building or structure or portion thereof shall be made, until the building official has issued a certificate of occupancy therefor as provided herein." Mr. Ramirez's businesses also do not have the proper certificates of occupancy and building permits for other structures at 925 Somerset Road. The vehicle crusher and large canopy building at 925 Somerset Road cannot properly be issued certificates of occupancy by Developmental Services for many reasons, including that there is no sprinkler system for these combined buildings, there is not a ten-foot fire lane in and around

---

[11] SAMC §§ 16-200, 16-210.7.

these buildings to allow fire trucks to get through in the event of fire, and the property has repeated pollution related violations of Chapter 16.

32.    Stormwater discharges associated with industrial activity in a regulated sector must be accompanied by permit authorization, and operators must prepare a Stormwater Pollution Prevention Plan ("SWPPP") and comply with sampling, inspection, training, and recordkeeping requirements. Mr. Ramirez's businesses has consistently failed to meet the previous requirements.

33.    The Texas Commission on Environmental Quality ("TCEQ") has investigated Mr. Ramirez's businesses and these investigations have resulted in findings that his businesses have illegally dumped petroleum products and chemicals on the ground at their salvage yard. TCEQ has filed and prosecuted an administrative action against him in Austin, Texas.

34.    The Texas state laws violated by Mr. Ramirez's businesses include the Solid Waste Disposal Act (Texas Health & Safety Code, Chapter 361, *et seq.*), the Texas Clean Air Act (Texas Health & Safety Code, Chapter 382, *et seq.*), the Texas Water Code (Texas Water Code, Chapter 1, *et seq.*), the Texas Health & Safety Code Chapter 343, the Federal Clean Air Act (42 U.S.C. § 7401, *et seq.*), the Federal Clean Water Act (33 U.S.C. § 1251, *et seq.*), the Federal Resources Conservation and Recovery Act (42 U.S.C. § 6901, *et seq.*), and the regulations promulgated pursuant thereto.

35.    Regulated releases requiring authorization at an auto salvage facility include automobile shredders, heaters, furnaces, boilers, welding operations, parts washers, and hand tools. Mr. Ramirez's businesses have not made the previous types of releases at their businesses at 819, 914 and 925 Somerset Road in a manner that is consistent with the requirements of the Texas Clean Air Act and Texas Clean Water Act. There have been multi-alarm fires at Mr. Ramirez's businesses at 925 Somerset Road which has polluted the air in the local neighborhood. There have been

discharges of oil and gas-polluted water at 925 Somerset Road into the local storm sewer–and thereby ultimately into area creeks, rivers, lakes, and aquifers–polluting them with contaminants.

36.     Mr. Ramirez's businesses have violated Texas Health & Safety Code §343.011(c)(2), (4) and (5) by keeping, storing, or accumulating rubbish on premises in a neighborhood or within 300 feet of a public street for ten days or more; allowing weeds to grow on the premises in a neighborhood if the weeds are located within 300 feet of another residence or commercial establishment; and maintaining buildings–and most particularly the large canopy structure on 925 Somerset Road which does not have the necessary sprinkler system installed–in a manner that is structurally unsafe or that constitutes a hazard to safety, health, or public welfare.

37.     Critically, Defendants Shannon, Tohmaz, Liguez, Jenny Ramirez, and Code Enforcement Officers allow Mr. Ramirez to operate an MRE business at 925 Somerset Road, violating his non-conforming rights. Under the UDC, a property owner has the right to continue a preexisting use that becomes unlawful because of a change in the UDC. SAMC § 35-701. If a property owner operates a Starbucks and a zoning change makes that use illegal, the property owner will be able to continue to use that property as they did before. However, if the owner changes or substantially enlarges the prior use, they are no longer entitled to continue the non-conforming use. SAMC § 35-706. Mr. Ramirez has illegally expanded his MRE business at 925 Somerset without getting proper approval from Development Services. Defendant Code Enforcement Officers are aware of these illegal expansions but take no meaningful enforcement action against Mr. Ramirez or his business. Defendant Code Enforcement Officers continued this course of action even though Mr. Ramirez's businesses automatically lost any non-conforming use rights as a matter of law under SAMC § 35-706.

38.     **Patron Metal Recycling (442 New Laredo Highway)**. This business is both an MRE and UAPR and has defective fencing surrounding its premises in violation of SAMC §§ 16-195, 16-210.2. In fact, part of the premises is completely unfenced.

39.     More importantly, Patron has expanded its MRE and UAPR operations onto a separate property tact without a proper certificate of occupancy for the accompanying structures and without proper zoning. Patron is currently operating MRE and UAPR operations on a tract that is not properly zoned for their operations. Patron also uses structures for MRE and UAPR operations without the proper certificate of occupancy. Patron has built and continuously operates a scale and scale house without proper approval from Development Services:



40.     **Highland Hills Machine Shop.** This business illegally operates as an MRE and UAPR with ***no permit*** from Development Services. Because this is an illegal MRE and UAPR operation, it does not have proper zoning or certificates for its business from Development

Services. Any non-conforming rights this business has regarding zoning have been automatically forfeited under UDC § 35-70.

41.     Because this business is an unlicensed MRE and UAPR, it does not report transactions to the Texas Department of Public Safety or the San Antonio Police as required by the SAMC. Businesses like these are magnets for individuals seeking to sell stolen and illegal auto parts and scrap metal.

42.     Additionally, Highland Hill Machine Shop's facilities are unsafe for public events because they wholly failed to comply with applicable safety regulations under the SAMC. They have no fire suppression system, appropriate electric systems, and appropriate means of egress and ingress. Below is a photograph that depicts the facilities and a pile of aluminum wheels illegally obtained by this business:



**C.     Defendants Shannon, Tohmaz, Melissa Ramirez, Liguez, and Code Enforcement Officers likewise ignore and protect other MREs and UAPRs from serious consequences.**

43.     Defendants have permitted Allied American Auto Parts—Marwin—Allied Auto (9170 New Laredo Hwy., San Antonio, Texas 78211; 9194 New Laredo Hwy., San Antonio, Texas

78211), Million Auto Parts (9651 New Laredo Hwy., San Antonio, Texas 78211), River City Steel & Recycling (5326 Roosevelt Ave., San Antonio, Texas 78214), Ashley's Steel and Recycling (4918 Roosevelt Ave., San Antonio, Texas 78214) to operate in violation of COSA and state laws and regulations:[12]

- Allied American Auto Parts—Marwin—Allied Auto is an Automobile Recycling Entity and does not meet the criteria as a Metal Recycling Entity. Therefore, its non-conforming us is limited to an Automobile Recycling Entity.

- Million Auto Parts needs a solid fence on all four sides but currently has a chain-link fence.

- River City Steel & Recycling has (1) a chain-link fence but no solid fence in front of the property, (2) is missing a solid screen fence at the back of the property, and (3) has toxic metal shaving fluff located in the yard.

- Ashley's Steel and Recycling (1) has three properties that are not platted, (2) has chain-link fencing but no solid fence in front of the property, (3) is missing a solid screen fence at the back of the property, and (4) has environmentally toxic metal shaving fluff located in their yard.

**D.    Defendants chart a warpath of intentional discrimination against Plaintiffs in the enforcement of San Antonio MRE and UAPR regulations.**

44.    While completely derelict in their duty to enforce applicable state and municipal ordinances, Defendants have singled out Plaintiffs in enforcing Chapters 10, 16 and the UDC. Defendants overly enforce Chapters 10, 16 and the UDC against Plaintiffs but not against other similarly situated MREs and UAPRs like Ramirez, Monterrey, Patron, Highland Hills Machine Shop, and the abovementioned entities. This selective enforcement is a clear violation of Plaintiffs' (1) Fourteenth Amendment right of equality before the law and (2) right to be free from discriminatory and retaliatory enforcement of the law.

---

[12] This is not a complete list of all violations of the approximately 89 MREs and UAPRs in the City of San Antonio. This list is simply an exemplar of the types of violation COSA ignores.

45.     As detailed above, Defendant Code Enforcement Officers have a consistent policy of not enforcing Chapters 10, 16, the UDC, and relevant environmental laws against MREs and UAPRs in the south side of San Antonio. This policy is particularly evident in their lack of regular enforcement against MREs and UAPRs in south San Antonio, except when it comes to *Plaintiffs*.

46.     Defendant Code Enforcement Officers claim to enforce Chapters 10, 16, and the UDC against MREs and UAPRs by issuing notices of violation and misdemeanor/civil citations. However, this is merely a facade. Defendant Code Enforcement Officers regularly fail to attend municipal court hearings on MRE and UAPR misdemeanor/civil violations.[13] As a result, these enforcement cases are dismissed, and the MREs and UAPRs escape without any consequences.[14]

47.     Defendant Code Enforcement Officers also claim they inspect MREs and UAPRs regularly to ensure compliance. Chapter 16 mandates that COSA inspects MREs and UAPRs monthly. SAMC §§ 16-200, 16-210.7. However, Defendant Code Enforcement Officers admit they do not comply with this city-mandated timeline.[15] Moreover, Defendant Code Enforcement Officers have failed to regularly inspect several MREs and UAPRs.

48.     Defendant Code Enforcement Officers claim they have no discretion in enforcing COSA municipal ordinances and must enforce the law as written.[16] But saying so does not translate into doing so. When asked about material violations of Chapters 10, 16 and the UDC by other MREs and UAPRs, Defendant Code Enforcement Officers claimed these examples would be clear violations of Chapters 10, 16 and the UDC (which then COSA would have no discretion to ignore).[17] But Defendant Code Enforcement Officers systemically permitted other MREs and

---

[13] *See E.g.*, Deposition of Jose Gutierrez, Jr. pp. 94-96, 102-03, 124 (Defendant Jose Gutierrez testifying that he has never testified in court regarding a citation for a MRE or UAPR while serving as Code Enforcement Officer despite inspecting almost every MRE and UARP business and issuing hundreds of citations).
[14] *See id.*
[15] *E.g.*, Deposition of Roxanne Ramirez p. 203; Deposition of Jose Gutierrez, Jr. pp. 229-30.
[16] *See e.g.*, Deposition of Roxanne Ramirez pp. 29-31; Deposition of Jose Gutierrez, Jr. pp. 229-30.
[17] *See e.g.*, Deposition of Roxanne Ramirez pp. 191-201.

UAPRs to engage in these violations without consequence. By their own admission, Defendant Code Enforcement Officers failed to follow the law concerning these clear Chapters 10, 16, and UDC violations. Defendant Code Enforcement Officers regularly noted the same violations by the same MREs and UAPRs. They admitted and recognized a pattern of flouting Chapters 10, 16, and the UDC by the same MREs and UAPRs, month after month.

49.     What's more, Defendant Code Enforcement Officers hold inconsistent views (and often incorrect views) on Chapters 10, 16, and the UDC's interpretation. Because of this, Defendant Code Enforcement Officers allow clear violations of Chapters 10, 16, and the UDC to go unaddressed, unremediated, and unpunished because of their unreasonable interpretations of the SAMC.

50.     Defendant Code Enforcement Officers also admit to wholly ignoring certain hazardous waste provisions of Chapter 16 and the Texas Solid Waste Disposal Act. They have a policy of not investigating illegal spills of toxic chemicals and pollutants.[18] Defendant Code Enforcement Officers have no training to investigate illegal spills and do not contact the Texas Commission on Environmental Quality for further investigation and resources.[19]

51.     In stark contrast, Defendant Code Enforcement Officers scrupulously enforce Chapters 10, 16 and the UDC against Plaintiffs. For example, Defendant Tohmaz admitted to having Code Enforcement Officers harass Plaintiffs about fencing regulations around their MRE property. In approximately the summer of 2023, Defendant Code Enforcement Officers pressed Plaintiffs on removing/adding to the metal fencing in their nearly 8.86-acre property ("609 Somerset"). Defendant Code Enforcement Officers threatened to shut down Plaintiffs within ten days unless Plaintiffs erected internal fencing thought their 609 Somerset property to crisscross

---

[18] *See e.g.*, Deposition of Roxanne Ramirez pp. 74-77, 151-53, 191-201; Deposition of Jose Gutierrez, Jr. pp. 255-60.
[19] *See e.g. id.*

the open property in a manner that completely impedes MRE activity. Defendant Code Enforcement Officers pressed Plaintiffs to install a sprinkler system in their 12,000 square foot warehouse, unlike similarly situated properties and businesses.[20] But this sprinkler system was completely unnecessary under the SAMC.

52.     Defendant Code Enforcement Officer consistently delay and mishandle Plaintiffs' MRE license application, fees, and associated paperwork. This creates critical delays in Plaintiffs' MRE operations and gives Defendant Code Enforcement Officers a pretext for further threats and discrimination. Defendant Code Enforcement Officers do not give Plaintiffs a break and initiate enforcement action against Plaintiffs for minor violations of the SMAC unlike other MREs and UAPRs.

53.     Defendant Code Enforcement Officers are aware of the consequences of their actions. They allow MREs and UAPR businesses like those owned by Danny Ramirez, Monterey Iron, Patron Metal Recycling, and Highland Hills Machine Shop to operate with impunity and damage the local environment and public health. While allowing other MREs and UAPRs to operate with impunity, they practice heavy-handed enforcement against Plaintiffs. They know that other MREs and UAPRs will not have to expend costs to comply with San Antonio's regulations of MREs and UAPRs. They know that Plaintiffs will have to expend costs on regulatory compliance unlike other San Antonio MREs and UAPRs.

54.     An example of Defendants' capricious and unequal enforcement is Patron Metal Recycling at 442 and 432 New Laredo Highway on the south side of San Antonio. Under the UDC, 442 and 432 New Laredo Highway needed a plat on file to be granted a building permit by COSA for a scale house and scale to be built on that property. A scale house and scale are essential

---

[20] Deposition of Amin Tohmaz p. 22.

components of an MRE business. Defendant COSA issued a stop work order when the prior owner of 442 and 432 New Laredo Highway—Ramazon Curuk—after he initiated the process of building a scale house and scale on this property. Later in time—after Douglas Gonzalez and Patron Metal Recycling purchased 442 and 432 New Laredo Highway from Curuk—Defendant COSA issued the new owners a building permit. Defendant COSA permitted Gonzales and Patron Metal Recycling to build a scale house and scale on the property without a current plat or without meeting any of the exceptions enumerated in the UDC. Defendant COSA disallowed Ramazon Curuk from building the scale house and scale because COSA employees, including Defendant Gutierrez, knew that Ramazon Curuk was selling scrap metal to Plaintiff TASI at 609 Somerset Road. Contrarily, Gonzalez and Patron were issued a building permit, and Defendant COSA permitted them to build the scale house and scale because COSA employees, including Defendant Gutierrez, knew that Patron competed with Plaintiff TASI. COSA, by these actions, carried out its long-term practice of harming Plaintiffs and helping their competitors through unequal enforcement of Chapters 10 and 16 of the San Antonio Municipal Code and the UDC as these codes relate to MREs and UAPRs in San Antonio.

55.    Defendant Code Enforcement Officers also intentionally prevented Plaintiffs from expanding their business on 609 Somerset Road. Plaintiffs platted their MRE business before 2013. This plat included several tracts of property not zoned for MRE operations. However, before December 2012, MREs could combine tracts with appropriate zoning and other tracts into a single plat for MRE operations. Because of this, Plaintiffs *are entitled* to use the entire 8.86 acres for their MRE business under the UDC. However, Defendant Code Enforcement Officers prevented Plaintiffs from using their entire property for MRE operations, claiming Plaintiffs needed to comply with the post-2012 version of the UDC.

56.    Critically, If Plaintiffs did not comply with Defendant Code Enforcement Officer's erroneous interpretation, then Defendant Code Enforcement Officers threatened to shut Plaintiffs' business down. Because of this harassment, Plaintiffs have been only able to utilize 5.66 acres for their MRE operations, materially limiting their business activities. Sticking to the common theme, other MREs and UAPRs—like Danny Ramirez's businesses, Patron Metal Recycling, and Highland Hills Machine Shop— have no such acreage or use restriction. Because of this, Plaintiffs have lost substantial amounts of profits they would have realized if they could utilize the entire 8.86 acres on 609 Somerset Road.

57.    In reliance of this illegal prohibition, Plaintiffs built different non-MRE structures and fencing on their property. Plaintiffs would have to remove these non-MRE structures and fencing to fully utilize their property for MRE operations. However, Plaintiffs are still unable to fully utilized their property and have missed out on profits from the same.

**E.    Defendant Gutierrez's unconstitutional actions against Plaintiffs.**

58.    Defendant Gutierrez was a considerable driving force behind Defendants' violations of Plaintiffs' constitutional right to equal protection. From approximately 2011 until 2021, Defendant Gutierrez served as a Code Enforcement Officer in Development Services.[21] Unfortunately, his harassment of Plaintiffs and violation of their state and federal constitutional rights characterize his tenure as a Code Enforcement Officer.

59.    While serving as a Code Enforcement Officer, Defendant Gutierrez inspected Plaintiff TASI as part of his official duties. During these inspections, he would harass Plaintiffs and falsely assert that Plaintiff TASI failed to comply with Chapters 10, 16 and the UDC. Like the other Defendant Code Enforcement Officers, Defendant Gutierrez would not enforce Chapters 10,

---

[21] Defendant Gutierrez is still employed by Defendant COSA, but in a different position.

16 and the UDC against other similarly situated MREs and UAPRs but would scrupulously enforce these Chapters against Plaintiffs.

60.    More importantly, Defendant Gutierrez was the driving force behind denying Plaintiff TASI's full use of 609 Somerset for its MRE business. At all times relevant to this lawsuit, Defendant Gutierrez claimed he interpreted the UDC to deny Plaintiff TASI the full use of the acreage on 609 Somerset for its MRE business. This led to Defendant Gutierrez allowing Plaintiff TASI to utilize only 5.66 acres instead of the entire 8.86 acres on 609 Somerset Road. As explained above, Plaintiff TASI was entitled to use the entire 8.86 acres for its MRE business under Chapter 35. Defendant Gutierrez should have known that Plaintiff TASI could use the entirety of 609 Somerset Road by reading *the applicable sections* of the SAMC. But Defendant Gutierrez consciously ignored the SAMC provisions that *clearly and unambiguously allowed* Plaintiff TASI to use all 609 Somerset's acreage.[22] Defendant Gutierrez consistently threatened Plaintiff TASI with shutting down the business, civil fines, and even criminal prosecution based on his intentional misinterpretation of the UDC. Upon information and belief, Defendant Gutierrez threatened Plaintiff TASI with shutting the business down, civil fines, and criminal prosecution because of his personal disdain for Plaintiffs.

61.    Defendant Gutierrez also encouraged and directed other Defendant Code Enforcement Officers to enforce UDC against Plaintiff TASI in this manner. Defendant Gutierrez continues to serve as an "expert" on MRE and UAPR regulations under the SAMC. Other COSA Code Enforcement Officers (including Defendant Code Enforcement Officers) seek guidance and direction from Defendant Guiterrez regarding MRE and UAPR regulations and the enforcement of the same.

---

[22] In the alternative, Defendant COSA inadequately trained Defendant Gutierrez to enforce the San Antonio Municipal Code against MREs and UAPRs.

F.    **Development Services' Supervisors implement policies that deprive Plaintiffs of their federal constitutional rights and were deliberately indifferent to Defendant Code Enforcement Officers' unconstitutional actions.**

62.    Defendant Shannon is the Director of Development Services and has served in that capacity since 2017.[23] Before that, Defendant Roderick Sanchez served in that role. Under the SAMC, the Director is responsible for the administration of Development Services. SAMC § 6-16. The Director (and their authorized representatives) are charged with and responsible for the enforcement of "building related codes" and issuing Certificates of Occupancy in the City of San Antonio. SAMC §§ 10-5, 10-12. The Director enforces Chapter 16 and supervises the Defendant Code Enforcement Officers. SAMC §§ 16-192, 16-200, 16-209, 16-210.7. Under Defendants Shannon and Tohmaz, Defendants Liguez and Jenny Rameriz manage and oversee Defendant Code Enforcement Officers. Defendant Roxanne Rameriz also oversees Defendant Code Enforcement Officers.

63.    Defendants Sanchez, Shannon, Tohmaz, Liguez, Jenny Ramirez, and Roxanne Ramirez ("Supervisory Defendants") failed to adopt policies and training on properly construing and applying the SAMC—including Chapters 10, 16, and the UDC—to MREs and UAPRs businesses in San Antonio. This failure caused Defendant Code Enforcement Officers to misinterpret (or, in the case of Defendant Gonzalez, gave him cover to intentionally ignore) the UDC's vested rights provisions and deny Plaintiffs the full use of 609 Somerset for MRE Operations. This failure also led to the Defendant Code Enforcement Officers arbitrarily and unevenly applying the SAMC to MREs and UAPRs. This arbitrary and uneven construction and application of the SAMC led to Defendant Code Enforcement Officers' scrupulous and over-

---

[23] Defendant Tohmaz served as "Interim" Director of Development Services from July 2024 until February 2025, while COSA assigned Defendant Shannon to work as the "Interim" Direct of Animal Care Services.

zealous enforcement against Plaintiffs while—at the same time—allowing clear violations by other similar MREs and UAPRs to go unabated and unremediated.

64.     Supervisory Defendants acted with deliberate indifference to the violation of Plaintiffs' federal right to equal protection. Plaintiffs have consistently objected to their treatment by Defendant Code Enforcement Officers and other agents. Plaintiffs, or their attorneys, have directly expressed these concerns with Defendants Sanchez, Shannon, Tohmaz, Roxanne Ramirez, and Jose Gutierrez regularly since 2015. Despite Plaintiffs' complaints, Supervisors Defendants took no meaningful action to prevent or abate Defendant Code Enforcement Officer's unequal treatment. Furthermore, Plaintiffs have deposed the majority of the Supervisory Defendants before Defendants removed this case to this Court. At the depositions, Plaintiffs questioned the Supervisory Defendants regarding their training policies and the impact on Plaintiffs.

**G.     Defendants also engage in Soviet-style retaliation against Plaintiffs for their exercise of free speech, association, and freedom to petition the government.**

65.     What's more, Defendants' unequal enforcement against Plaintiffs is a clear message: (1) Plaintiffs should not speak out against the COSA or its departments, and (2) Plaintiffs should not hold certain political views contrary to COSA's city council and other officials. Defendants unequally enforce the law against Plaintiffs because they criticize COSA and its employees. Defendants also unequally enforce the law against Plaintiffs because they hold conservative political and religious beliefs and positions that are often at odds with the COSA city council and employees.

66.     Plaintiffs are intimately involved with the civic process. Plaintiffs often attend and participate in COSA City Council meetings, COSA advisory committee meetings, and COSA Development Services Committee meetings. At these meetings and public proceedings, Plaintiffs often address Defendants' policy of non-enforcement against other MREs and UAPRs. Plaintiffs

also often privately communicate with COSA elected officials and staff to discuss Plaintiffs' views on MRE and UAPR regulations and enforcement. Plaintiffs frequently attend neighborhood association meetings where they express critical views of COSA staff and elected officials. At these neighborhood association meetings, Plaintiffs criticize Defendants' non-enforcement policy, denial of Plaintiffs' equal protection rights, and Defendants' naked harassment of Plaintiffs. Defendants do not appreciate these criticisms and use the power of the state to stifle Plaintiffs' criticism.

67.    Another example of COSA's discrimination against Plaintiffs is COSA's MRE and UAPR regulations task force. In June 2024, COSA's Planning & Community Development Committee formed a task force of *industry* and community members to review and update the San Antonio Municipal Code's MREs and UAPRs regulations. The alleged purpose behind this committee was to strengthen city regulations of MREs and UAPRs to better protect public health and the environment.[24]

68.    COSA apparently believed that industry representation on the task force is crucial, but the COSA City Attorney's Office categorically prohibited Plaintiffs from serving on the task force or *even participating and communicating with it*. Instead, COSA only permitted bad actors in the industry to serve on the task force. Plaintiffs' counsel made multiple attempts to make public comments at task force meetings—meetings that are open to the public and subject to the Texas Open Meetings Act—but the COSA City Attorney's Office prohibited Plaintiffs from making public comments regarding the task force actions and recommendations. COSA claimed that Plaintiffs or their attorneys could not speak at task force meetings public comment sessions because of their lawsuit against COSA. But this was a pretext for discrimination. No "ongoing

---

[24] Although that is a tall order for COSA. COSA would actually have to enforce these new regulations against MREs and UAPRs to improve public health or the environment—something it currently fails to do.

litigation" exception exists to Plaintiffs' First Amendment Right to speech and petition. Bottom line, COSA unconstitutionally muffles Plaintiffs' rights to free speech and petition.

69.     Defendants do not appreciate Plaintiffs' views and civic participation. Because of this, Defendants make an exception to their non-enforcement policy with Plaintiffs. Defendants single out Plaintiffs and enforce Chapters 10, 16 and the UDC against them because of their public criticism of COSA and its employees, their public participation in the civic process, and their conservative political viewpoints.

70.     Because Plaintiffs' petitioning and communication with COSA officials are futile, Plaintiffs have shared their criticism with the San Antonio area media. When Plaintiffs speak out against the COSA's policies and practices, COSA employees will dismiss Plaintiffs and describe them as opportunists to the San Antonio media. Recently, a COSA employee falsely stated to the media that Plaintiffs brought this lawsuit to shut down their competitors and that this lawsuit was frivolous. These actions exemplify the malice and ill will COSA harbors against Plaintiffs.

71.     Upon information and belief, Defendant Code Enforcement Officer have regularly took (and continue to take) enforcement actions against Plaintiffs because of their political and religious beliefs, public criticism of COSA and Development Services, lawsuits against COSA, and participation in neighborhood associations.[25] Upon information and belief, Supervisory Defendants have regularly permitted (and continue to permit) Defendant Code Enforcement Officer to take enforcement actions against Plaintiffs because of their political and religious beliefs, public criticism of COSA and Development Services, lawsuits against COSA, and participation in neighborhood associations.

---

[25] In fact, Defendant Roxanne Ramirez expressed her personal disdain for Plaitniffs' and their situation and status in the industry in a phone call with Douglas and Claudia Gonzales of Patron Metal Recycling.

**H.    Not only have Defendants' actions caused pecuniary loss, but they have also caused Plaintiff Daniel Hack ten years of mental anguish.**

72.    To state that Defendants' actions and/or omission caused financial harm to Plaintiff Daniel Hack ("Danny") would only be half of the story of Defendants' unequal enforcement of MRE and UAPRs regulations. Plaintiff TASI is Danny's and his family's livelihood and life mission. Danny has worked incredibly hard to support himself, his wife, and his children over the last fifteen years, working through Defendants' intense, unfair, and illegal and unequal treatment.

73.    Defendants' actions have caused Danny to suffer unbearable stress and anxiety over the last fifteen years. Danny also suffers shame and embarrassment from Defendants' treatment of him. Danny's stress and anxiety are so powerful that he has difficulty sleeping on many nights. He cannot enjoy life or his work with his business because of this profound stress and anxiety Defendants impose on him. While spending time away from work with his family or on time off, the trauma Defendants have wrought cause Danny to constantly ruminate about Defendants' past and potential future illegal and unconstitutional actions against him and Plaintiff TASI. Stated otherwise: Danny lives in constant fear that Defendants will illegally shut down his business. Additionally, Danny exhibits signs and symptoms of suffering from post-traumatic stress disorder from his and Plaintiff TASI's dealings with Defendants, which have fundamentally limited and altered his ability to live a "normal" life and engage in all the activities that he used to. Moreover, Defendants' continuing misconduct is creating an escalation of Danny's stress and trauma.

## CAUSE OF ACTION I

### *ULTRA VIRES* ACTION

*(Against Defendants Shannon, Tohmaz, Liguez, Jenny Ramirez, and Code Enforcement Officers in their official capacities)*

74.    Plaintiffs reallege and incorporate by reference all previous paragraphs herein.

75.     Defendants Shannon, Tohmaz, Jenny Ramirez, and Liguez have acted *ultra vires* by systemically permitting MRE and UAPR entities to operate in violation of Chapters 10, 16, and the UDC. Defendants Shannon, Tohmaz, Jenny Ramirez, and Liguez wholly abandoned their responsibilities in enforcing Chapters 10, 16, and the UDC as to UAPR and MRE businesses in San Antonio. Defendants Shannon, Tohmaz, Jenny Ramirez, and Liguez's nonenforcement policy are actions without legal authority and therefore *ultra vires*.

76.     Defendant Code Enforcement Officers have acted *ultra vires* by failing to initiate enforcement actions against UAPRs and MREs violations of Chapters 10, 16 and the UDC. Defendant Code Enforcement Officers state they must construe the San Antonio Municipal Code as written and ***must*** initiate enforcement actions against violating businesses or require the businesses to cure the violation in lieu of enforcement. However, despite regular inspections of UAPR and MRE businesses, Defendant Code Enforcement Officers have failed to initiate enforcement actions or informal resolution in lieu of enforcement actions against:[26]

- Monterrey Iron;

- Patron Metal Recycling;

- Highland Hills Machine Shop;

- Allied American Auto Parts—Marwin—Allied Auto;

- Million Auto Parts;

- River City Steel & Recycling;

- Ashley's Steel and Recycling;

- Danny's Steel and Recycling;

---

[26] These businesses are hereinafter referred to as the "Violating Businesses."

> ▪ MREs and UAPRs business in the City of San Antonio owned or affiliated with Danny Ramirez.

77.     This illegal nonenforcement policy and Defendant Code Enforcement Officers' knowing omissions regarding the Violating Businesses harm Plaintiffs because other MREs and UAPRs are not required to incur expenses to comply with San Antonio municipal MRE and UAPR regulations. This, in turn, gives competing MREs, UAPRs, and the Violating Businesses a competitive advantage over Plaintiffs in this line of business as they can realize higher profit margins or offer lower prices because of the lack of regulatory costs imposed on the businesses by Defendants.

78.     Defendant Code Enforcement Officers have acted *ultra vires* by prohibiting Plaintiff TASI from using the entirety of 609 Somerset for its MRE operations. Defendant Guttierez has acted *ultra vires* by training and directing other San Antonio Code Enforcement Officers with his reckless and erroneous construction of the SAMC that Plaintiff TASI cannot use the entirety of 609 Somerset for MRE Operations. Under SAMC § 35-702, Plaintiff TASI is entitled to use the entirety of 609 Somerset for MRE operations as it operated an MRE business on this property before the effective date of more stringent zoning requirements in 2012. SAMC § 35-702. On Defendant Gutierrez's insistence, Defendant Code Enforcement Officers recklessly and erroneously believe that the more stringent zoning requirements apply to Plaintiff TASI. And accordingly, they prevent Plaintiff TASI from expanding its MRE businesses on 609 Somerset by threatening Plaintiffs TASI and Hack with work stoppages, civil violations, and criminal prosecution. These are *ultra vires* actions as Plaintiffs are entitled to use the entirety of 609 Somerset for their MRE business under SAMC § 35-702.

79.    Plaintiffs ask the Honorable Court to issue a permanent injunction against Defendants Shannon, Tohmaz, Jenny Ramirez, Liguez, and Defendant Code Enforcement Officers, and all persons in active concert with them, enjoining them:

- From allowing Danny Ramirez and his businesses located at 925 Somerset to operate illegally without the necessary permits and certificates of occupancy and in violation of the laws cited herein, including, but not limited to the SMAC;

- From continuing, implementing, approving, or directing any formal or informal policy or custom of nonenforcement of Chapters 10, 16 and 35 of the San Antonio Municipal Code against MREs and UAPRs in the City of San Antonio;

- From preventing or hindering (including by threatening civil litigation, criminal prosecution, or other sanctions) Plaintiffs from using the entire premises of 609 Somerset for MRE operations;

- From preventing Defendant Code Enforcement Officers from harassing Plaintiffs and demanding actions that are not required by the SAMC for MRE operations; and

- From permitting Defendant Gutierrez from training or otherwise directing COSA Code Enforcement Officers on MRE or UAPR regulations or inspections.

80.    Plaintiffs also ask this Honorable Court to issue a permanent injunction ordering Defendants Shannon, Tohmaz, Jenny Ramirez, Liguez, and Defendant Code Enforcement Officers, and all persons in active concert with them, to:

- Take enforcement action (including, but not limited to, issuing a citation, filing a complaint with the San Antonio City Attorney, issuing a Notice of Violation, or a written warning) against MREs and UAPRs upon observing facts establishing

probable cause of violation of MRE and UAPR regulations under the SAMC or the applicable state and federal laws; and

- To recognize that Danny Ramirez's businesses (925 Somerset), Patron Metal Recycling, and Highland Hills Machine Shop have violated (and consequently forfeited) their non-conforming use rights under the UDC.

81.    Plaintiffs ask this Honorable Court to enter a declaratory judgment declaring that:

- Hugo Sanchez's MRE's business (Highland Hills Machine Shop) is a violation Chapter 16's licensing requirement and violates the UDC's zoning requirement for the property he operates on;

- Danny Ramirez's business at 925 Somerset non-conforming use rights have terminated because of illegal expansion of MRE operations in violation of the UDC;

- Patron Metal Recycling's non-conforming use rights have terminated because of their illegal expansion of MRE operations in violation of the UDC; and

- Monterey Iron's maintenance of auto fluff (or automotive shredder residue) violates Chapter 16.

## CAUSE OF ACTION II

## INVERSE CONDEMNATION UNDER THE TEXAS CONSTITUTION

*(Against Defendant COSA)*

82.    Plaintiffs reallege and incorporate by reference all previous paragraphs herein.

83.    Article I, Section 17 of the Texas Constitution provides: "No person's property shall be taken, ***damaged, or destroyed for or applied to*** public use without adequate compensation being made . . . ." TEX. CONST. art. I, § 17 (emphasis added). The protections the Texas Constitution provides are far broader than the Federal Fifth Amendment Takings Clause. *See Jim Olive*

*Photography v. Univ. of Houston Sys.*, 624 S.W.3d 764, 777 (Tex. 2021) (J. Busby, concurring) ("[T]he Texas Constitution requires compensation for more types of government action than [the United State Constitution].").

84.     COSA and its agents have taken, damaged, and destroyed TASI's property. Specifically, COSA's non-enforcement policy gives other MREs and UAPRs a substantial competitive advantage. This unlawful competitive advantage allows competing MRE and UAPRs to process and ship substantially more metals than TASI. This COSA-created discrepancy has caused and continues to cause TASI to process and ship fewer metals than its unregulated and unburdened MRE and UAPR competitors. And because of this, TASI loses revenue and, ultimately, profits.

85.     COSA and its agents have taken, damaged, and destroyed TASI's property by categorically prohibiting it from using the entire 8.86 acres on 609 Somerset Road for its MRE business. Instead, COSA and its agents only allow TASI to operate its MRE business on 5.66 acres instead of the 8.86 acres it is entitled to under the San Antonio Municipal Code. COSA has imposed this restriction on TASI for the public good, as this reduces the level of MRE activity in COSA. COSA has not compensated TASI for this acreage restriction.

86.     COSA's non-enforcement policy is ostensibly adopted for the public good. In that, COSA spends less money and resources on enforcing Chapters 10, 16 and 35 and relevant state environmental laws against MRE and UAPRs on the south side of San Antonio. COSA's non-enforcement policy also benefits the public because city staff do not have to risk expensive and potentially violent confrontations with Danny Ramirez. To date, COSA has not compensated TASI for its taking, damage, and destruction of TASI in the form of lost profits.

87.     As permitted by Section 17, TASI seeks money damages from COSA for its lost profits due to COSA's partial taking, damages, and destruction of TASI. TASI additionally seeks a permanent injunction and declaratory relief to prevent COSA's future taking, damage, and destruction of TASI.

## CAUSE OF ACTION III

### 42 U.S.C. § 1983—CLASS OF ONE EQUAL PROTECTION VIOLATION

*Against Defendant COSA, Supervisory Defendants (in their Individual Capacities), and Defendant Code Enforcement Officers (in their Individual Capacities)*

88.     Plaintiffs reallege and incorporate by reference all previous paragraphs herein.

89.     Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.

90.     A person has a viable Section 1983 claim when they show that (1) the person was deprived of a right secured by the Constitution and laws of the United States and (2) the deprivation occurred under color of state law. *Cornish v. Correctional Servs. Corp.*, 402 F.3d 545, 549 (5th Cir. 2005). To succeed on such an Equal Protection Claim, a plaintiff must show (1) that a local government or government intentionally treats the plaintiff differently from other similarly situated individuals, and (2) there is no rational basis for the differential treatment. *Wood v. Collier*, 836 F.3d 534, 539 (5th Cir. 2016). Here, Defendants have denied Plaintiffs their Fourteenth Amendment Right to Equal Protection with no rational basis.

91.     Defendant COSA has a policy or custom of not enforcing Chapters 10, 16 and the UDC against MREs and UARPs. Defendant COSA implements this non-enforcement by

categorically declining to prosecute MREs and UARPs after the Defendant Code Enforcement Officers file a criminal or administrative complaint with the City Attorney's Office or the San Antonio Municipal Court. The San Antonio City Attorney is charged with enforcing violations of City Ordinances in the San Antonio Municipal Court. However, the City Attorney's Office is consciously indifferent and/or facilitates this policy and custom of de facto legalization of Chapters 10, 16 and 35 violations by MREs and UAPRs.

92.     Unlike other UAPRs and MREs, Defendant Code Enforcement Officers do not apply Defendant COSA's non-enforcement practice to Plaintiffs. Instead, Defendant Code Enforcement Officers single out Plaintiffs and harass them by inspecting Plaintiff TASI and initiating enforcement actions against them.

93.     Defendant Code Enforcement Officers have also irrationally and capriciously reduced Plaintiffs' operations on 609 Somerset. Plaintiffs are entitled to use the entire 8.86 acres that comprise 609 Somerset. However, Defendant Code Enforcement Officers have only permitted Plaintiffs to use 5.66 acres for MRE operations instead of the 8.86 they are entitled to. At the same time, Defendant Code Enforcement Officers allow other MREs and UAPRs (including, but not limited to, Danny Ramirez's businesses, Patron Metal Recycling, and Highland Hill Machine Shope) to operate on property not zoned or platted for MRE operations and without proper certificates of occupancy. These discriminatory enforcement actions violate Plaintiffs' constitutional right to Equal Protection under the Fourteenth Amendment. Defendant Code Enforcement Officers are aware of this discrepancy but take no care to correct this discrimination.

94.     This illegal nonenforcement policy and Defendant Code Enforcement Officers knowing omissions regarding the Violating Businesses harm Plaintiffs because other MREs and UAPRs are not required to incur expenses to comply with San Antonio municipal MRE and UAPR

regulations. This, in turn, gives competing MREs, UAPRs, and the Violating Businesses a competitive advantage over Plaintiffs in this line of business as they can realize higher profit margins or offer lower prices because of the lack of regulatory costs imposed.

95.    Additionally, Plaintiff TASI has suffered special damages in the form of lost profits because of Defendants' discriminatory conduct against it. Plaintiff Danny Hack, as owner of TASI, has suffered special damages in the form of lost profits because of Defendants' discriminatory conduct against him. Specifically, Plaintiffs would have realized additional revenues and profits from their MRE business had Defendants not prohibited Plaintiffs from using the entirety of 609 Somerset for MRE operations. Plaintiffs have attempted to mitigate their damages by using the property for non-MRE operation purposes by erecting structures and fencing in place of MRE operations. However, Plaintiffs would have realized more profits if they could have used all 609 Somerset's acreage for MRE operations.

96.    Plaintiff Daniel Hack has suffered and will continue to suffer profound stress and anxiety from Defendants' actions and/or omissions. This stress and anxiety disrupt Plaintiff Daniel Hack's daily life. Plaintiff Daniel Hack seeks damages for mental anguish under this cause of action.

97.    In the alternative, Defendant COSA and the Supervisory Defendants inadequately trained and supervised its Code Enforcement Officers in the Development Services Department to interpret the San Antonio City Municipal Code and were deliberately indifferent to the consequences of its inadequate training and supervision. This inadequate training, supervision, and deliberate indifference led to Defendant Code Enforcement Officers disallowing Plaintiffs from using the entirety of 609 Somerset Road for their MRE business. But for Defendants COSA's inadequate training and supervision, Defendant Code Enforcement Officers would have allowed

Plaintiffs to use the entire acreage on 609 Somerset for MRE purposes. Had Defendant COSA and the Supervisory Defendants properly trained and supervised Defendant Code Enforcement Officers, they would have realized that the San Antonio Municipal Code unambiguously allows Plaintiffs to use the entire acreage on 609 Somerset.

98.     Plaintiffs seek injunctive relief requesting that the Court permanently enjoin Defendants, and all persons in active concern with Defendants, from:

- Preventing Plaintiffs from using the entirety of 609 Somerset for MRE operations; and

- Denying Plaintiffs equal protection under the law.

99.     Plaintiffs also seek declaratory relief declaring that Defendants' non-enforcement policy violates Plaintiffs' Fourteenth Amendment Right to equal protection under the law, and that Plaintiffs are entitled to use the entirety of 609 Somerset's acreage for MRE operations.

100.     Pursuant to 42 U.S.C. § 1988, Plaintiffs also seek their reasonable attorneys' fees in prosecuting their Section 1983 causes of action.

## CAUSE OF ACTION IV

## 42 U.S.C. § 1983—SELECTIVE ENFORCEMENT

*Against Defendant COSA, Supervisory Defendants (in their Individual Capacities), and Defendant Code Enforcement Officers (in their Individual Capacities)*

101.     Plaintiffs reallege and incorporate by reference all previous paragraphs herein.

102.     To prove a Selective Enforcement claim, a plaintiff must show that a local government or local officials' enforcement against the plaintiff was for improper considerations, including race, religion, or the desire to prevent the exercise of a constitutional right. *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003). Here, Defendants have denied Plaintiffs equal protection of the law because of their enforcement for improper purposes.

103.    Defendants, individually or collectively, enforced SAMC Sections 10, 16, and 35 against Plaintiffs in retaliation for their exercise of free speech at COSA city council meetings and COSA advisory committee meetings. Defendants, individually or collectively, enforced SAMC Sections 10, 16, and 35 against Plaintiffs because of their petitioning of COSA elected/appointed officials and COSA employees regarding the enforcement and regulation of MREs and UAPRs in south San Antonio. Finally, Defendants enforced SAMC Chapters 10, 16, and 35 against Plaintiffs because of their political beliefs and their exercise of their First Amendment rights.

104.    Plaintiff Daniel Hack has suffered and will continue to suffer profound stress and anxiety from Defendants' actions and/or omissions. This stress and anxiety disrupt Plaintiff Daniel Hack's daily life. Plaintiff Daniel Hack seeks damages for mental anguish under this cause of action.

105.    In the alternative, Defendant COSA and the Supervisory Defendants inadequately trained its Code Enforcement Officers in the Development Services Department to interpret the San Antonio City Municipal Code and was deliberately indifferent to the consequences of its inadequate training. This inadequate training and deliberate indifference led to Code Enforcement Officers engaging in discriminatory enforcement against Plaintiffs, which continues to this day.

106.    Plaintiffs seek injunctive relief requesting that the Court permanently enjoin Defendants from initiating enforcement action against Plaintiffs because of their (or their agent's) (i) political beliefs, (ii) religious beliefs, (iii) statements and criticisms regarding COSA and its officials and employees, (iv) complaints and requests to COSA and its officials and employees, and (v) association with private neighborhood groups.

107.    Plaintiffs also seek declaratory and injunctive relief as requested previously to prevent Defendants from violating Plaintiffs' constitutional rights.

108.    Pursuant to 42 U.S.C. § 1988, Plaintiffs also seek their reasonable attorneys' fees in prosecuting their Section 1983 causes of action.

## CAUSE OF ACTION V

## 42 U.S.C. § 1983—FIRST AMENDMENT RETALIATION

*Against Defendant COSA, Supervisory Defendants (in their Individual Capacities), and Defendant Code Enforcement Officers (in their Individual Capacities)*

109.    Plaintiffs reallege and incorporate by reference all previous paragraphs herein.

110.    To recover on a First Amendment Retaliation claim, a plaintiff must show Defendants to have chilled plaintiffs in the exercise of their First Amendment rights due to their retaliation against the same. Here, Plaintiffs seek to stop Defendants' suppression and denial of their First Amendment Rights to free speech, petition, and association.

111.    Plaintiff Daniel Hack took down political signs, flags, and murals on his property in hopes of diminishing the retaliatory activities directed against him by Defendants. Plaintiff Daniel Hack and TASI settled an earlier lawsuit against Defendant COSA on the agreement that COSA would, after the settlement, begin to equally enforce Chapters 10, 16, and 35 of the San Antonio Municipal Codes as against all MREs and UAPRs in San Antonio and COSA would stop illegally targeting TASI. COSA immediately breached this agreement and never complied with it. Plaintiffs Daniel Hack and TASI have not met with their elected representatives as they would like in order to make their complaints about COSA's code enforcement for fear that Defendants and COSA employees would heighten their intentionally misguided enforcement activities against Plaintiffs Daniel Hack and TASI.

112.    Not only do COSA's policies have a chilling effect, but they outright deny Plaintiffs a chance to speak and petition the government. At MRE and UAPR advisory committee meetings, Plaintiffs or their attorneys were not permitted to speak at the public comment session. Every

citizen in the City of San Antonio had the opportunity to comment on the work and proceedings of the MRE and UAPR advisory committee *except for Plaintiffs*. COSA employees claimed that Plaintiffs could not voice their concerns in the public comment session because of ongoing litigation. But this is a pretext. Instead, COSA has a policy of denying Plaintiffs an opportunity to voice their concerns on COSA's regulation and enforcement in the MRE and UAPR industry.

113.     Plaintiff Daniel Hack is an Evangelical Christian and conservative Republican. He has repeatedly curbed his inclinations to engage in these communities—such as by promoting his patriotism with the things he wears and says—or by promoting the Biblical principles that he himself subscribes to in public—again out of fear that Defendants will further target him for these beliefs. Plaintiff Daniel Hack believes his constitutional rights have been impinged on and their exercise chilled because every time he would want to exercise his constitutional rights, he would have to weigh that against another unwarranted inspection accompanied by threats made against him by Defendants at his business locations because, upon information and belief, Defendants and COSA employees will attack Daniel Hack for who he is, what he believes in, and for exercising his constitutional rights including speaking out against the ineptitude and corruption among COSA government bureaucrats.

114.     Plaintiffs have exhausted all formal and informal methods to resolve their grievances with Defendant COSA and other Defendants.[27] In fact, such attempted resolutions back-fire and cause Defendants to retaliate against them (in enforcement and with statements to the press and other MREs and UAPRs) for trying to resolve their issues with Defendants. The only resolution to Defendants' actions was to file this lawsuit.

---

[27] In fact, the SAMC contains no relevant provisions to formally resolve these complaints with COSA.

115.    Plaintiffs seek injunctive relief requesting that the Court permanently enjoin Defendants, and all in active concern with Defendants, from:

- Communicating false and misleading statements to the press, at public functions, or to other in the MRE and UAPR industry in San Antonio about Plaintiffs;

- Retaliating against Plaintiffs for voicing concerns to COSA, speaking out at neighborhood associating meetings, and speaking out at public forums or in the press; and

-  Retaliating against Plaintiffs for petitioning other government officials regarding enforcement of MRE and UAPR regulations in San Antonio (including, but not limited to, TCEQ, San Antiono Water System, the San Antonio Police Department, and San Antonio Fire Department).

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiffs respectfully pray for the following:

- That Defendants be cited to appear and answer herein;

- That after trial on the merits, the Honorable Court enter a declaratory judgment against Defendants as set forth herein;

- That after trial on the merits, the Honorable Court awards general and special damages to Plaintiffs as determined by the trier of fact, including lost profit damages and mental anguish damages;

- That this Honorable Court award all reasonable attorneys' fees and costs in prosecuting their Section 1983 Claims;

- That after a hearing, this Honorable Court issue a permanent injunction against Defendants as set forth herein; and

- That this Honorable Court award all such further and additional relief to which the Plaintiffs are justly entitled at law or in equity.

Dated: February 24, 2025

Respectfully submitted,

THE POWELL LAW FIRM
1148 E. Commerce Street
San Antonio, Texas 78205
Telephone: (210) 225-9300
Facsimile: (210) 225-9301

By: */s/ Jon Powell*
    Jon Powell
    State Bar No. 00797260
    *jon@jpowell-law.com*
    John M. Johnson
    State Bar No. 24094002
    *mickey@jpowell-law.com*

    SANTOYO WEHMEYER P.C.
    IBC Highway 281 North Centre Building
    12400 San Pedro Avenue, Suite 300
    San Antonio, Texas 78216
    Telephone: (210) 998-4200
    Facsimile: (210) 998-4201
    R. William Whitmer
    State Bar No. 24125456
    *wwhitmer@swenergylaw.com*

**ATTORNEYS FOR PLAINTIFFS**

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of February, 2025, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to all counsel of record.

*/s/ R. William Whitmer*
R. William Whitmer