**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| TEXAS AUTO SALVAGE, INC.,<br>DANIEL HACK,<br>*Plaintiffs*<br><br>v.<br><br>CITY OF SAN ANTONIO, *et al.*,<br>*Defendants* | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Case No. SA-25-CV-00052-XR |

**ORDER ON MOTION TO DISMISS**

On this date, the Court considered the Individual Defendants' motion to dismiss (ECF No. 70), Plaintiffs' response (ECF No. 74), the Individual Defendants' reply (ECF No. 85), Plaintiffs' sur-reply (ECF No. 91), and the parties' arguments at the hearing held in this matter on July 14, 2026. After careful consideration, the Court issues the following order.

**BACKGROUND**

**I. Factual Background**

Plaintiffs Texas Auto Salvage, Inc. ("TASI") and Daniel Hack operate a metal recycling business ("MRE") at 609 Somerset Road in San Antonio, Texas. ECF No. 82 ¶ 22. They allege that Defendants, the City of San Antonio and several officials in the City's Development Services Department ("Development Services" or "DSD"), have engaged in selective and discriminatory enforcement of municipal regulations, targeting TASI while permitting competitors to operate without similar scrutiny, resulting in financial harm and alleged constitutional violations.

Plaintiffs have sued two former DSD Directors—Roderick Sanchez and Michael Shannon—in their official capacities, and three DSD employees—Amin Tohmaz, Roxanne Ramirez, and Jose Gutierrez Jr.—in their official and individual capacities. *See* ECF No. 82 at 31–47; ECF No. 101 (voluntarily dismissing claims against several other individual defendants).

### A. The 2010 Lawsuit

This is not Plaintiffs' first suit alleging unequal enforcement of Article VII of Chapter 16 of the San Antonio Municipal Code (the "Code" or "SAMC"), which regulates MREs and used automotive parts recyclers ("UAPRs").

In 2010, Plaintiffs sued a neighboring metal recycler, San Antonio Auto & Truck Salvage ("SAATS"), and its owner, Daniel Ramirez, alleging numerous torts, including a statutory claim for public nuisance under Chapter 16 of SAMC. *Texas Auto Salvage, Inc. v. DD Ramirez, Inc.*, No. 13-19-00500-CV, 2021 WL 4780218, at *1 (Tex. App.—Corpus Christi-Edinburg Oct. 14, 2021, no pet.) [hereinafter, "*TASI I*"]. Plaintiffs alleged numerous torts,[1] including a claim for public nuisance. *Id.* The petition alleged that DDR kept its three metal recycling yards "polluted, dirty, unkempt, and in a condition that violates city, state and federal rules, regulations and laws" and that this "had a detrimental impact on nearby businesses such as TASI," whose metal recycling yard is located across the street from one of DDR's facilities. *Id.*

*TASI I* was consolidated with a suit filed against the City and several DSD employees by KMH LLC dba Acme Recycling ("Acme") in May 2013. *See KMH, LLC et al. v. City of San Antonio et al.*, No. 5:13-cv-1046-FB, ECF No. 1 at 5 (W.D. Tex. Nov. 18, 2013). In October 2013, Plaintiffs and Acme filed an amended petition alleging discriminatory enforcement of Chapter 16, in violation of their equal protection rights, and the City removed the case based on federal question jurisdiction. *Id.*

According to Plaintiffs, "[t]hat lawsuit caused COSA to revise Chapter 16 to more effectively regulate the industry, making COSA and employees' duty to enforce Chapter 16

[1] In addition to their public-nuisance claim, Plaintiffs alleged claims for defamation, business disparagement, invasion of privacy, and tortious interference with contracts, private nuisance, abuse of process, malicious prosecution, unjust enrichment, and conversion. *See TASI I*, 2021 WL 4780218, at *1.

nondiscretionary." ECF No. 82 ¶ 26. After mediation, Plaintiffs agreed to dismiss their claims against the City and DSD employees based on the City's agreement to "properly and adequately enforce the strengthened Chapter 16 as to SAATS and Ramirez." *Id.*; *see also KMH, LLC et al. v. City of San Antonio et al.*, No. 5:13-cv-1046-FB, ECF No. 43 (W.D. Tex. Aug. 4, 2014).

Following the dismissal of Plaintiffs' federal claims, the case was remanded to state court (*see id.*, ECF No. 49), where, after a two-week trial, the jury found against TASI on all but its public nuisance claim. *TASI I*, 2021 WL 4780218, at *1.

In connection with its public nuisance claim, TASI sought a declaratory judgment stating that: (1) DDR was in violation of Chapter 10 of the Municipal Code because it lacked the required certificate of occupancy; and (2) DDR was in violation of Chapter 16 of SAMC because its facilities met the definition of "public nuisance" in that ordinance. *Id.* TASI further requested temporary and permanent injunctions enjoining DDR from, among other things, "opening and operating" its metal recycling facilities "and continuing to violate city, state and federal rules, regulations and law" in doing so. *Id.*

At trial, the jury found, in relevant part, that (a) the City and/or its employees were derelict in their duties by not properly enforcing Chapters 10 and 16 of the Municipal Code with respect to DDR and (b) two of DDR's three facilities were public nuisances as defined in Chapter 16 of the Municipal Code. *Id.* at *4.

The trial court later granted DDR's motion for a directed verdict, which asserted, among other things that TASI lacked standing to bring a public nuisance claim because it did not suffer any special injury. *Id.* The Court of Appeals affirmed the directed verdict:

> TASI cites no . . . authority, and we find none, establishing that a governmental unit's "dereliction of duty" authorizes a plaintiff to bring suit regardless of whether a special injury has resulted. Instead, we agree with DDR that *a private plaintiff is not entitled to injunctive or declaratory relief*

> *to address the alleged violation of a municipal ordinance unless the plaintiff establishes special injury.*

*Id.* at *7 (collecting cases) (emphasis added).

**B. 2012 Code Amendments and Replatting**

On December 13, 2012, the City amended portions of its Unified Development Code to, among other things, limit the zoning classifications in which MREs could operate. *See* City Ordinance 2012-12-13-1006 [hereinafter, "2012 Amendments"]. MREs were no longer able to expand their operations or "rebuild[]" buildings or structures unless they had non-conforming use rights (i.e., the right to continue using land and buildings in a way that was legal at the time of the zoning change) "within the property boundaries such as they existed on the effective date of" the 2012 Amendments. *Id.* § 53 (codified as SAMC § 35-702(d)). The ordinance also made MREs "eligible to obtain building permits for rebuilding and expansion within the property boundaries such as they existed on" December 13, 2012. *Id.*

On December 6, 2012—a week before the effective date of the 2012 Amendments—Plaintiffs replatted their property to include several tracts *not* zoned for metal recycling, permitting TASI to expand its MRE operations within the entire premises without losing its non-conforming use rights. ECF No. 82 ¶ 37. TASI submitted the replat to DSD, which accepted and approved the replat and later recorded the replat with the Bexar County Clerk on January 4, 2013. *Id.* ¶ 38.

On December 23, 2015, Michael Shannon, the DSD Director at the time, confirmed TASI's non-conforming rights to use the entirety of 609 Somerset by issuing a non-conforming rights letter to TASI (the "2015 NCU Letter"). *Id.*

**C. DSD Employees' Alleged Disregard for 2012 Replat**

After the 2012 Amendments became effective, Defendant Amin Tohmaz, the current Director of the DSD, claimed he and other DSD employees started analyzing MRE and UAPR

properties to determine if they complied with the substantial changes made in the 2012 Code Amendments. *Id.* ¶ 39. He claimed he used Google Earth images to determine if MRE/UAPR businesses had expanded since the 2012 Amendments, and if such expansion was lawful. *Id.*

Notwithstanding the 2015 NCU Letter, beginning in 2017, DSD "employees repeatedly told TASI it did not have non-conforming use rights on—and therefore could not use—2.26 acres of its property on 609 Somerset." *Id.* ¶ 40. Based on this "conscious, reckless, and continuing disregard of TASI's 2012 replat," *id.*, Defendants Roxanne Ramirez—a Licensing/Permitting and Zoning Code Enforcement Manager within the DSD, *id.* ¶ 14—and Jose Gutierrez, Jr.—a former Code Enforcement Officer, who now serves as a DSD "expert" on MRE/UAPR regulations, *id.* ¶ 17 (together with Ramirez, "Code Enforcement Officials")—allegedly "encouraged and directed other [] Code Enforcement Officers to enforce the SAMC against Plaintiff TASI in this erroneous manner," *id.* ¶ 43.

Plaintiffs allege that Gutierrez "consistently threatened Plaintiff TASI with shutting down the business, civil fines, and even criminal prosecution based on his intentional misinterpretation of the [Code] . . . . because of [the City's] and his personal disdain for and in retribution of Plaintiffs." *Id.* ¶ 42. They further assert that, at Ramirez's insistence, other Code Enforcement Officers threatened TASI with stop-work orders if it conducted MRE operations on the restricted sites. *Id.* ¶ 41. Ramirez also had "personal disdain for Plaintiffs and their situation," which she expressed in an "industry phone call" with another MRE on some unspecified date. *Id.* at 29 n.28.

TASI reluctantly operated under DSD's interpretation of its use rights, *id.* ¶ 40, and alleges that "Defendants have prevented [it] from exercising its right to fully use 609 Somerset for MRE purposes every single day since March 2017." *Id.* ¶ 45. As a result, TASI was unable to process 132,079 tons of scrap metal between August 1, 2021 and July 31, 2024, *id.* ¶ 44. TASI's inability

to use its property to its fullest extent has allegedly caused it to lose over $49,571,940 in revenue and $7,806,482 in lost profits. *Id.*

**D. DSD Employees' Allegedly Discriminatory Code Enforcement**

In March 2015—seven months after the 2010 Lawsuit settled, Plaintiffs filed this suit in state court against the City, alleging non-enforcement of Code violations by SAATS and Mr. Ramirez and seeking injunctive and declaratory relief. *See* ECF No. 1-1 at 14.

Although the City allegedly issued six notices of violation against SAATS and Mr. Ramirez for not having the proper building permits and certificates of occupancy at two locations, it "has allowed [them] to continue to illegally operate [their] salvage yard and recycling businesses without curing these violations to the detriment of the community and other similar area businesses, such as TASI, who comply with the applicable laws." *Id.* at 15. Later that year, Plaintiffs amended their petition to add an ultra vires claim against Roderick Sanchez, who was then the Director of the DSD. *Id.* at 43.

Plaintiffs assert that, through discovery, they learned that "COSA's failure to enforce was not limited to SAATS." *Id.* ¶ 32. Instead, "COSA and its employees exhibited a pattern, policy, and culture of repeatedly declining to enforce Chapter 16 and other SAMC provisions as to competitors of TASI, but hyper-vigilantly over-regulating TASI." *Id.* Plaintiffs offer several examples of this alleged over-enforcement:

- In summer 2023, Tohmaz had Code Enforcement Officers "harass Plaintiffs about fencing regulations," threatening to shut down TASI's operations if it did not install internal fencing within ten days. *Id.* ¶ 53. Plaintiffs allege that the fencing was not necessary under the code and "would completely impede metal recycling activities." *Id.*

- At an unspecified date, Code Enforcement Officers "pressed Plaintiffs to install a sprinkler system in their 12,000 square foot warehouse, unlike similarly situated properties and businesses," which Plaintiffs allege was "completely unnecessary." *Id.* ¶ 54.

- At an unspecified date, Code Enforcement Officers "harassed Plaintiffs over a small oil stain on a concrete surface at 609 Somerset, claiming this was a major violation of the Texas Solid Waste Disposal Act." *Id.*

- In September 2025, Roxanne Ramirez started investigating Plaintiffs for storing scrapped shipping containers on 609 Somerset's premises on the basis that the shipping containers violated TASI's zoning and use. *Id.* ¶ 55. TASI was allegedly issued a notice of violation due to the shipping containers. *Id.*

  According to Plaintiffs, this enforcement activity "starkly contrasts" with Enforcement Officers' treatment of Monterey Iron & Metal Recycling, which has been allowed "to bury numerous scrapped shipping containers on its property under a SAMC-mandated fire lane." *Id.*

Plaintiffs allege that their competitors are permitted to continue operations despite having illegally stored or disposed of hazardous materials, including a six-acre pile of shredder residue and metal fluff piles containing toxic chemicals (ECF No. 82 ¶ 64), disposed of illegal and toxic liquids visible on satellite photos (*id.* ¶ 66), conducted operations without proper zoning, certificates of occupancy, or non-conforming use rights (*id.* ¶¶ 67–71), deliberately obstructed mandatory fire lanes needed to permit fire-truck access (*id.* ¶ 65), and acted as magnets for individuals seeking to sell stolen and illegal auto parts and scrap metal (*id.* ¶ 69).

Plaintiffs allege that this disparate treatment is not a mistake:

> *Defendant Code Enforcement Officers are aware of the consequences of their actions.* They allow other MRE/UAPR-businesses to operate with impunity, thereby damaging the local environment and public health. While allowing other MREs and UAPRs to operate with impunity, they practice and continue to practice heavy-handed enforcement against Plaintiffs. They know that other MREs and UAPRs will not have to expend costs to comply with San Antonio's regulations of MREs and UAPRs and will be able to use more of their properties for MRE/UAPR operations. They know that Plaintiffs, on the other hand, will have to expend costs on regulatory compliance, unlike other San Antonio MREs and UAPRs. They also know that their conduct is causing Plaintiffs to sacrifice use of some of their property, diminishing the amount of Plaintiffs' MRE/UAPR operations.

*Id.* ¶ 56 (emphasis added).

Under the SAMC, Director Tohmaz has the "authority to render interpretation of [SAMC, Chapter 10] and to adopt policies and procedures in order to clarify the application of its provisions." SAMC § 10-5(a). Plaintiff alleges that, rather than adopting "policies and training on properly construing and applying the SAMC," the supervisory Defendants—Tohmaz and Ramirez—established an *ad hoc* approach: "On any given question, simply defer to the most senior Code Enforcement Officer involved." *Id.* ¶ 59. As a result, Plaintiffs allege, "Code Enforcement Officers hold inconsistent views (and often incorrect views) on Chapters 10, 16, and the UDC's interpretation. Because of this, Defendant Code Enforcement Officers have allowed and continue to allow clear violations of Chapters 10, 16, and the UDC to go unaddressed, unremediated, and unpunished because of their unreasonable interpretations of the SAMC." *Id.* ¶ 52.

**E. DSD Employees' Allegedly Retaliatory Conduct**

Finally, Plaintiffs allege that they have been subject to retaliation by the City and DSD employees due to (1) this lawsuit, (2) their efforts to speak out against their unequal treatment at public events, including City Council meetings, City advisory committee meetings, DSD Committee meetings, neighborhood association meetings, and (3) their conservative political and religious beliefs. *See id.* ¶¶ 73, 74, 77, 79.

As one example, in June 2024, the City formed a task force of industry and community members to review and update the San Antonio Municipal Code's MREs and UAPRs regulations. *Id.* ¶ 75. The City Attorney's Office allegedly prohibited Plaintiffs from serving on the task force or even speaking at meetings because of their lawsuit against COSA. *Id.* ¶ 76.

Plaintiffs further allege, "[u]pon information and belief," that "Defendant Code Enforcement Officers have regularly taken (and continue to take) enforcement actions against

Plaintiffs because of their political and religious beliefs, public criticism of COSA and [DSD], lawsuits against COSA, and participation in neighborhood associations. *Id.* ¶ 79.

In response to this alleged retaliation, Hack has removed political signs, flags, and murals on his property and has not met with his elected representatives to complain about the City's and DSD employees' conduct "for fear that Defendants and COSA employees would heighten their intentionally misguided enforcement activities." *Id.* ¶ 126.

## II. Procedural History

Before it was removed to this Court, the underlying state-court action, originally between Plaintiffs and the City, had been active for almost ten years. In that time, the City produced over 2,300 pages of documents, and thirteen City employees were deposed (some multiple times), accounting for over 62 hours of testimony.

In December 2024, Plaintiffs filed and served their Second Amended Petition in state court, alleging, for the first time, causes of action for violations of the U.S. Constitution under 42 U.S.C. §1983. The City timely removed the case based on federal question jurisdiction. *See* ECF No. 1.

Following removal, Plaintiffs amended their complaint several times. In their Fifth Amended Complaint—now the operative pleading—Plaintiffs allege claims for inverse condemnation and violations of Texas Government Code § 245.002 against the City, official-capacity claims for ultra vires actions against the Individual Defendants, and claims under 42 U.S.C. § 1983 against Tohmaz, Ramirez, Gutierrez, and the City for violations of their rights under the Equal Protection Clause and First Amendment. *See* ECF No. 82 at 31–47; ECF No. 101 (voluntarily dismissing claims against several individual defendants named in the Fifth Amended Complaint).

Both the City and the Individual Defendants filed motions under Rule 12. *See* ECF No. 69 (City's Motion for Judgment on the Pleadings); ECF No. 70 (Individual Defendants' Motion to Dismiss). At a hearing held on July 14, 2026, the Court denied the City's motion from the bench, dismissed Plaintiffs' claims alleging First Amendment retaliation, and otherwise took the Individual Defendants' motion under advisement.

The Individual Defendants assert that (1) Plaintiffs have failed to state a plausible claim for an ultra vires act because Code enforcement is discretionary; (2) Plaintiffs have failed to identify any actionably conduct within Texas's two-year statute of limitations; (3) Plaintiffs' claims are barred by qualified immunity; (4) Plaintiffs' claims for selective enforcement and First Amendment retaliation fail because they have not adequately alleged that the Individual Defendants have acted with an improper motive; and (5) Plaintiffs have failed to identify appropriate comparators in support of their equal protection claims. *See* ECF No. 70.

## DISCUSSION

### I. Legal Standards

#### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) allows a party to move for the dismissal of a complaint for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

A claim for relief must contain: (1) "a short and plain statement of the grounds for the court's jurisdiction"; (2) "a short and plain statement of the claim showing that the pleader is entitled to relief"; and (3) "a demand for the relief sought." FED. R. CIV. P. 8(a). A plaintiff "must provide enough factual allegations to draw the reasonable inference that the elements exist." *Innova Hosp. San Antonio, L.P. v. Blue Cross & Blue Shield of Ga., Inc.*, 995 F. Supp. 2d 587, 602 (N.D. Tex. Feb. 3, 2014) (citing *Patrick v. Wal-Mart, Inc.-Store No. 155,* 681 F.3d 614, 617 (5th Cir. 2012)).

In considering a motion to dismiss under Rule 12(b)(6), all factual allegations from the complaint should be taken as true, and the facts are to be construed in the light most favorable to the nonmoving party. *Fernandez-Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993). Still, a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "'[N]aked assertions' devoid of 'further factual enhancement,'" and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the presumption of truth. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557); *see also R2 Invs. LDC v. Phillips*, 401 F.3d 638, 642 (5th Cir. 2005) (stating that the Court should neither "strain to find inferences favorable to the plaintiffs" nor accept "conclusory allegations, unwarranted deductions, or legal conclusions.").

**B. Qualified Immunity**

"The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011). There are two steps to determining whether a defendant is protected by qualified immunity. *Saucier v. Katz*, 533 U.S. 194 (2001). First, the court asks

whether the official "violated a statutory or constitutional right." *Morgan*, 659 F.3d at 371 (quoting *Ashcroft v. al-Kidd*, 131 S. Ct. 2074, 2083 (2011)). Second, the court asks whether "the right was 'clearly established' at the time of the challenged conduct." *Id.* (quoting *al-Kidd*, 131 S.Ct. at 2083). Courts have the discretion to decide the order in which to answer these two prongs. *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

When a defendant invokes qualified immunity, the burden shifts to the plaintiff to demonstrate the inapplicability of the defense. *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002). At the motion-to-dismiss stage, a district court must find that the plaintiff's pleadings assert facts, which, if true, would overcome the defense of qualified immunity. *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012). "Thus, a plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Id.*

"[W]hen a defendant asserts a qualified-immunity defense in a motion to dismiss, the court has an obligation . . . to carefully scrutinize [the complaint] before subjecting public officials to the burdens of broad-reaching discovery." *Longoria ex rel. M.L. v. San Benito Indep. Consol. Sch. Dist.*, 942 F.3d 258, 263–64 (5th Cir. 2019).

## II. Analysis

### A. Ultra Vires Claims

A plaintiff may sue a governmental official for the official's "ultra vires" acts, that is, acts illegally outside the scope of her authority; or her failure "to perform a purely ministerial act." *City of El Paso v. Heinrich*, 284 S.W.3d 366, 372 (Tex. 2009). An official has a ministerial duty where the law speaks with "such precision and certainty as to leave nothing to the exercise of discretion."

*Hall v. McRaven*, 508 S.W.3d 232, 238 (Tex. 2017) (quoting *Sw. Bell Tel., L.P. v. Emmett*, 459 S.W.3d 578, 587 (Tex. 2015)). On the other hand, if the relevant statute or ordinance provides the official with absolute discretion to act, the act cannot be ultra vires. *Houston Belt & Terminal Ry. Co. v. City of Houston*, 487 S.W.3d 154, 163–64 (Tex. 2016) (citations omitted). If the statute or ordinance gives the official limited discretion to act, the act is only ultra vires if it exceeds the lawfully granted discretion. *Id.* In addition to failing to perform a ministerial duty, an official also acts *ultra vires* when she acts "without legal authority." *Heinrich*, 284 S.W.3d at 372. Lawsuits based on "ultra vires" actions afford only injunctive or declaratory relief, and only prospectively. *Id.* at 377.

Plaintiffs assert that a Code Enforcement Officer who observes a violation has a non-discretionary, ministerial duty to issue a notice of violation. ECF No. 74 at 4. Indeed, SAMC provides that "a notice of violation *shall be issued* providing two (2) business days to cure the defect unless otherwise provided by [the Director of the Development Services Department]." SAMC §§ 16-200(b)(1), 16-210.7(c) (emphasis added). Plaintiffs allege that the Individual Defendants observed numerous, ongoing violations by Plaintiffs' competitors but have failed to issue the required notices. ECF No. 82 ¶¶ 64–72. Beyond such notices, Code inspections and enforcement appear to be discretionary. *See, e.g.*, SAMC §§ 16-200(a), 16-210.7(a) (DSD "is *authorized* to conduct monthly inspections" of UAPRs and MREs) (emphasis added); SAMC §§ 16-200(a), 16-210.7(a) ("[A] code enforcement officer . . . *may* inspect" a UAPR or MRE "upon reasonable suspicion of any wrongdoing.") (emphasis added); SAMC §§ 16-202(a), 16-210.20(a) (Violators "*shall be subject* to prosecution in administrative, criminal, *and/or* civil courts.") (emphasis added).

The Individual Defendants do not disagree that the use of "shall" creates a mandatory, non-discretionary duty to issue notices of violations but correctly observe that "Plaintiffs seek injunctive relief which would be totally divorced from the limited ministerial and non-discretionary duties in the Code imposed on the Individual Defendants." ECF No. 70 at 6.

In their Fifth Amended Complaint, Plaintiffs ask the Court to enjoin the Individual Defendants from:

- Allowing Danny Ramirez and his businesses located at 925 Somerset to operate illegally without the necessary permits and certificates of occupancy and in violation of the laws cited herein, including, but not limited to the SAMC;

- Continuing, implementing, approving, or directing any formal or informal policy or custom of nonenforcement of Chapters 10, 16, and 35 of the San Antonio Municipal Code against MREs and UAPRs in the City of San Antonio;

- Preventing or hindering (including by threatening civil litigation, criminal prosecution, or other sanctions) Plaintiffs from using the entire premises of 609 Somerset for MRE operations;

- Harassing Plaintiffs and demanding actions that are not required by the SAMC for MRE operations; and

- Permitting Defendant Gutierrez from training or otherwise directing City Code Enforcement Officers on MRE or UAPR regulations or inspections.

ECF No. 82 ¶ 88. They also seek an injunction ordering the Individual Defendants to:

- Take enforcement action (including, but not limited to, issuing a citation, filing a complaint with the San Antonio City Attorney, issuing a Notice of Violation, or a written warning) against MREs and UAPRs upon observing facts establishing probable cause of violation of MRE and UAPR regulations under the SAMC or the applicable state and federal laws;

- Recognize that Danny Ramirez's businesses (925 Somerset), Patron Metal Recycling, and Highland Hills Machine Shop have violated (and consequently forfeited) their non-conforming use rights under the UDC.

*Id.* ¶ 89. Finally, Plaintiffs seek a declaratory judgment that:

- Hugo Sanchez's MRE business (Highland Hills Machine Shop) is a violation of Chapter 16's licensing requirement and violates the UDC's zoning requirement for the property he operates on;

- Danny Ramirez's business at 925 Somerset non-conforming use rights have terminated because of the illegal expansion of MRE operations in violation of the UDC;

- Patron Metal Recycling's non-conforming use rights have terminated because of their illegal expansion of MRE operations in violation of the UDC; and

- Monterey Iron's maintenance of auto fluff (or automotive shredder residue) violates Chapter 16.

*Id.* ¶ 89.

Plaintiffs have not identified any mandatory enforcement or training provision that would require the Individual Defendants to do anything but issue notices of violation. Nor have they even alleged that any of the Individual Defendants have failed to issue notices to TASI's competitors in connection with their purported SAMC violations.

Instead, Plaintiffs object that its competitors are permitted to continue *operating*, despite ongoing violations. *See id.* ¶ 65 (Officers "have allowed (and continue to allow) Monterey Iron to bury numerous scrapped shipping containers on its property"); *id.* ¶ 68 ("Officers allow Ramirez to operate an MRE business at 925 Somerset Road" that has been "illegally expanded"); *id.* ¶ 69 ("Patron is currently operating MRE and UAPR operations on a tract that is not zoned correctly for their operations."); *id.* ¶ 70 (Highland Hill Machine Shop "operates illegally as an MRE and UAPR without a permit from Development Services or COSA.").

Even assuming that some enforcement against TASI's competitors were required, SAMC plainly affords DSD prosecutorial discretion. *See* SAMC § 16-210.20(a)–(b)(Violators "shall be subject to prosecution in administrative, criminal, and/or civil courts" or "administrative adjudication"). Plaintiffs have not identified any provision in SAMC indicating that an enforcement action against an MRE *must* force the MRE to cease its operations entirely.

As to the one ministerial duty identified in the complaint—issuing violation notices—Plaintiffs lack standing to insist that the City issue even mandatory notices to TASI's competitors. *See United States v. Texas*, 599 U.S. 670 (2023) (concluding that under Article III, a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution); *TASI I*, 2021 WL 4780218, at *7 ("[A] private plaintiff is not entitled to injunctive or declaratory relief to address the alleged violation of a municipal ordinance unless the plaintiff establishes special injury.").

Finally, given the 2015 NCU Letter, the Court is satisfied that Plaintiffs have adequately alleged an ultra vires claim based on the DSD Directors' and Ramirez's efforts to prevent Plaintiffs from fully using 609 Somerset for MRE purposes "without legal authority," *Heinrich*, 284 S.W.3d at 372, "every single day since March 2017." *Id.* ¶ 45.

Thus, all ultra vires claims seeking any relief other than full use of TASI's property for MRE purposes are **DISMISSED WITH PREJUDICE** for failure to state a claim.

### B. Section 1983 Claims

#### 1. First Amendment Retaliation

A plaintiff alleging First Amendment retaliation must plead facts showing: (1) he took actions protected by the First Amendment; (2) the official's response injured him in a way that would "chill a person of ordinary firmness from continuing to engage in that activity"; and (3) the official's response was "substantially motivated against" the plaintiff's exercise of First Amendment rights. *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017) (citing *Keenan v. Tejeda*, 290 F.3d 252, 258 (5th Cir. 2002)).

Plaintiffs allege that all of the Individual Defendants are "suppress[ing] and den[ying] their First Amendment Rights to free speech, petition, and association." ECF No. 82 ¶ 125. But they do

not allege that any of the Individual Defendants have silenced them at public meetings. *See, e.g., id.* ¶ 76 (asserting that the *City Attorney* prohibited them from participating in an industry task force). Nor do they allege any Individual Defendant even knew about Plaintiffs' civic participation, political views, or religion, much less were motivated by them.

Instead, Plaintiffs nakedly assert, "[u]pon information and belief," that Ramirez and Gutierrez (the "Defendant Code Enforcement Officers") and have regularly taken (and continue to take) enforcement actions against Plaintiffs because of their political and religious beliefs, public criticism of COSA and Development Services, lawsuits against COSA, and participation in neighborhood associations—and Tohmaz and Ramirez (the "Supervisory Defendants") have permitted them to do so. ECF No. 82 ¶ 79. Such threadbare, conclusory allegations are not entitled to the presumption of truth. *See Iqbal*, 556 U.S. at 678.

Accordingly, and as stated in open court, Plaintiffs have failed to state a claim for First Amendment retaliation under 42 U.S.C. § 1983.

**2. Selective Enforcement**

"[T]o successfully bring a selective prosecution or enforcement claim, a plaintiff must prove that the government official's acts were motivated by improper considerations, such as race, religion, or the desire to prevent the exercise of a constitutional right." *Bryan v. City of Madison, Miss.,* 213 F.3d 267, 277 (5th Cir. 2000). "[I]t must be shown that the selective enforcement 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Allred's Produce v. U.S. Dep't of Agric.*, 178 F.3d 743, 748 (5th Cir. 1999) (citing *Oyler v. Boles*, 368 U.S. 448, 456 (1962)). "The conscious exercise of some selectivity in enforcement is not in itself a federal constitutional violation." *Id.*

The Fifth Circuit has stated that personal vindictiveness might be an improper motive in a selective enforcement case, but the court has "never specifically addressed whether such a motive would be enough to support an equal protection claim without some other class-based discrimination." *Bryan*, 213 F.3d at 277 n.18; *see also Allred's Produce*, 178 F.3d at 748 (including all but personal vindictiveness); *Stern v. Tarrant Cnty. Hosp. Dist.*, 778 F.2d 1052, 1058 (5th Cir. 1985) (including all but personal vindictiveness).

A discriminatory purpose "requires more than a mere 'awareness of consequences.'" *See Lewis v. Ascension Par. Sch. Bd.*, 662 F.3d 343, 349 (5th Cir. 2011). Rather, "[i]t implies that the decisionmaker . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Pers. Adm'r of Mass. v. Feeney*, 442 U.S. 256, 279 (1979). A plaintiff's "subjective belief of discrimination, however genuine, [cannot] be the basis of judicial relief." *Elliott v. Grp. Med. & Surgical Serv.*, 714 F.2d 556, 567 (5th Cir. 1983).

Here again, given their failure to adequately allege a discriminatory motive Plaintiffs' selective enforcement claim suffers the same fate as their claim for First Amendment retaliation. *See* ECF No. 82 ¶ 56 (alleging that the Individual Defendants are "aware of the consequences of their actions"). Reading the complaint in the light most favorable to Plaintiffs, they have alleged that Ramirez and Gutierrez have selectively enforced the Code based on their "personal disdain" for Plaintiffs. *See id.* ¶ 42, n.28. But even assuming that personal animus is a constitutionally impermissible motive, the Individual Defendants are entitled to qualified immunity because it is not yet clearly established under federal law. *See Bryan*, 213 F.3d at 277 n.18; *Morgan*, 659 F.3d at 371.

Accordingly, Plaintiffs' selective-enforcement claims are **DISMISSED WITH PREJUDICE**.

**3. Class-of-One Equal Protection**

The Equal Protection Clause of the Fourteenth Amendment provides that "no State shall deny . . . to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. It "forbids state actors from treating similarly situated individuals differently *for a discriminatory purpose* and without a rational basis." *Gil Ramirez Grp., LLC v. Hous. Indep. Sch. Dist.*, 786 F.3d 400, 419 (5th Cir. 2015). An equal protection claim requires either identification of a class or showing that the aggrieved party is a "class of one." *Id.* The "class-of-one rationale," however, "does not apply to 'forms of state action . . . which by their nature involve discretionary decision-making based on a vast array of subjective, individualized assessments." *Id.*

**(a) Statute of Limitations**

The Individual Defendants argue that all claims against them are time-barred because Plaintiffs knew of the alleged injury and causation by 2017, yet did not sue most Tohmaz or Ramirez until December 16, 2024 and did not sue Gutierrez until February 2025. *See* ECF No. 70 at 26 (citing ECF No. 1-1 at 274–75 and ECF No. 20). Because Plaintiffs' retaliation and selective enforcement claims failed on the merits, the Court has not yet had occasion to consider the Individual Defendants' limitations argument. Before turning to the merits of Plaintiffs' class-of-one claim, the Court will address the Individual Defendants' limitations argument.

The statute of limitations for a suit brought under Section 1983 is determined by the general statute of limitations governing personal injuries in the forum state. *See Pete v. Metcalfe*, 8 F.3d 214, 217 (5th Cir. 1993). Texas has a two-year statute of limitations for personal injury claims. *See Burrell v. Newsome*, 883 F.2d 416, 418 (5th Cir. 1989). Federal law, however, governs when

a Section 1983 claim accrues. *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998). The Fifth Circuit has stated that "[u]nder federal law, a cause of action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." *Gartrell v. Gaylor*, 981 F.2d 254, 257 (5th Cir. 1993). As a result, the limitations period begins "when the plaintiff is in possession of the 'critical facts that he has been hurt and who has inflicted the injury.'" *Id.* (quoting *Lavellee v. Listi*, 611 F.2d 1129, 1130 (5th Cir. 1980)).

Plaintiffs respond that the continuing tort doctrine applies, such that each violation creates a new cause of action and the limitations period does not finally accrue until the wrongful conduct ceases. ECF No. 74 at 31. "The continuing violation doctrine is a federal common law doctrine governing accrual." *Heath v. Bd. of Supervisors for S. Univ. & Agric. & Mech. Coll.*, 850 F.3d 731, 739 (5th Cir. 2017), *as revised* (Mar. 13, 2017) ("Title VII continuing violation law applies with equal force to section 1983[.]"); *see also id.* ("[W]hen a plaintiff alleges a hostile work environment claim, 'as long as an employee files her complaint while at least one act which comprises the hostile work environment claim is still timely, "the entire time period of the hostile environment may be considered by a court for the purpose of determining liability."'") (quoting *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 117 (2002)).

*Morgan* established a bright-line distinction between discrete acts, which are individually actionable, and acts which are not individually actionable but may be aggregated. The former must be raised within the applicable limitations period or they will not support a lawsuit. *Id.* at 113 ("[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges. Each discriminatory act starts a new clock for filing charges alleging that act.").

Plaintiffs allege ongoing, repeated wrongful conduct occurring through the present, including that Defendants "have prevented" and "continue to prevent" TASI from using its property. ECF No. 74 at 33. Plaintiffs also allege that the City has implemented a continuing non-enforcement policy by categorically declining to prosecute MREs and UAPRs after the Defendant Code Enforcement Officers file a criminal or administrative complaint with the City Attorney's Office or the San Antonio Municipal Court. ECF No. 82 ¶ 102. They allege that the Individual Defendants, in turn, have failed to apply the City's non-enforcement practice to Plaintiffs, and instead "single out Plaintiffs and harass them by unequally inspecting Plaintiff TASI and initiating enforcement actions against them." *Id.* ¶ 103.

Critically, however, Plaintiffs acknowledge that they have:

> consistently objected to the individual wrongful conduct by Defendant Code Enforcement Officers and other agents, but did not learn until 2024 that these separate [and allegedly] wrongful acts were part of a pattern, process, policy, and custom of COSA and the Individual Defendants to purposely and insidiously limit Plaintiffs' rightful use of all their property to the full extent of the law. *Plaintiffs, or their attorneys, have directly expressed these concerns with Defendants [Tohmaz, Ramirez, and Gutierrez] regularly since 2015.*

ECF No. 82 ¶ 61 (emphasis added). In other words, Plaintiffs were aware of the Individual Defendants' individual activity since 2015, but did not file any claims against them until at least December 2024.

Based on the filing-dates of Plaintiffs' amended pleadings, their claims against Tohmaz and Ramirez are limited to conduct occurring after December 16, 2022. Claims against Gutierrez are limited to conduct occurring after February 24, 2023. Discrete violations occurring outside these windows are time-barred, though evidence of early conduct may be admitted as background to establish the pattern and continuing nature of the violations.

**(b) Merits**

A class-of-one equal-protection claim requires the plaintiff "show that (1) he or she was intentionally treated differently from others similarly situated and (2) there was no rational basis for the difference in treatment." *Lindquist v. City of Pasadena*, 669 F.3d 225, 233 (5th Cir. 2012) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

Plaintiffs' claims fail on the first prong. To be sure, Plaintiffs have identified competitors who have allegedly not been subject to the same degree of enforcement activity, and the requirement "that a class-of-one plaintiff's comparators be 'similarly situated' is not a requirement susceptible to rigid, mechanical application." *Lindquist*, 669 F.3d at 233 (internal quotations omitted). Still, Plaintiffs have failed to allege that the comparators it has identified are similarly situated, at least as to their claims against the Individual Defendants in their *individual* capacities.

Even assuming that TASI's competitors are appropriate comparators as to enforcement by the *City*, Plaintiffs have not plausibly alleged a class-of-one claim against any of the Individual Defendants.

For example, Plaintiffs allege that Defendant Ramirez issued a notice of violation to TASI in September 2025 relating to scrapped shipping containers. *See* ECF No. 82 ¶ 55. While they further assert that the Defendant Code Enforcement Officers allowed one of its competitors—Monterey Iron & Metal Recycling—"to bury numerous scrapped shipping containers on its property under a SAMC-mandate fire lane," they do not specifically allege that *Ramirez* permitted such a violation and, accordingly, have failed to state a claim against Ramirez in her individual capacity. *See id.*

Similarly, while Plaintiffs allege that Defendant Tohmaz "harassed" them about erecting internal fencing in summer 2023, *id.* ¶ 53, they do not identify a similarly situated MRE that Tohmaz *failed* to harass.

Finally, Plaintiffs do not allege any specific class-of-one claims against Defendant Gutierrez within the limitations period. *See generally id.*

In sum, Plaintiffs have failed to state a class-of-one claim against the Individual Defendants in their individual capacities.

## CONCLUSION

After careful consideration, the Individual Defendants' motion to dismiss (ECF No. 70) is **GRANTED IN PART** and **DENIED IN PART**. All claims asserted against Defendant Gutierrez are barred by limitations. The motion is **DENIED** as to Plaintiffs' ultra vires claims regarding full use of TASI's property for MRE purposes. The motion is otherwise **GRANTED** in all respects. All claims for actual damages against the Individual Defendants are **DISMISSED WITH PREJUDICE.**

The following claims remain pending asserted against the City: inverse condemnation under the Texas Constitution, claims for violations of Texas Local Government Code § 245.002 and Plaintiffs' Federal Constitutional rights under 42 U.S.C. § 1983.

The Court further concludes that mediation is appropriate. Accordingly, the Court **ORDERS** the Plaintiffs and the City to mediate this case before United States Magistrate Judge Kelly G. Stephenson.

Mediation is a mandatory but non-binding settlement conference wherein the parties attempt to resolve their differences with the assistance of a third-party facilitator. All proceedings in a mediation session are confidential and protected from discovery. No subpoenas, summons, citations, or other process shall be served at or near the location of any mediation session, upon any person entering, leaving, or attending any mediation session.

Counsel and parties and shall confer with Judge Stephenson and agree upon a mediation date. If no agreed date can be found, Judge Stephenson will select a date and the parties shall appear as directed. Unless this Court extends the deadline, mediation shall occur no later than **October 20, 2026**.

Plaintiffs and the City were able to settle the 2010 Lawsuit following mediation, and, despite the lengthy tenure of this case, the Court is confident that counsel and parties will proceed in a good faith effort to try to resolve this case. To that end, the parties should consider whether the Court's rulings on standing and the statute-of-limitations might also extend to Plaintiff's claims against the City to limit their recovery at the summary-judgment stage.

Following the mediation, the Court will be advised only that the case did or did not settle. No other information will be transmitted to the Court by the mediator or any other party.

Further, the Court finds this case is appropriate for administrative closure pending the outcome of mediation. *See Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2004). The Clerk's office is therefore **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case pending further order of the Court. Though administratively closed, this case will still exist on the docket of this Court and may be reopened upon request or on the Court's own motion. Parties may continue to file motions and documents in the case. All deadlines in this case are **STAYED.**

It is so **ORDERED**.

**SIGNED** this 24th day of July, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE